**WATKINS v. OAKLAWN JOCKEY CLUB et al.**

Civ. No. 415.

United States District Court
W. D. Arkansas, Hot Springs Division.
Nov. 4, 1949.

1008

C. Floyd Huff, Jr., Hot Springs, Ark., J. H. Lookadoo, Arkadelphia, Ark., for plaintiff.

R. J. Glover, Hot Springs, Ark., for defendants Brown and Fulton.

W. J. Smith, of Donham, Fulk & Mehaffy, Little Rock, Ark., for defendant Oaklawn Jockey Club.

JOHN E. MILLER, District Judge.

Two motions filed on October 17, 1949, by the defendants are before the Court for disposition. One is a motion for judgment for defendants filed under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The other, a motion to dismiss, was filed under Rule 12(c). A brief statement of the status of the case and the issues is desirable in the interest of clarity.

The complaint was filed June 23, 1949. The plaintiff asserts that the Court has jurisdiction under Section 1343 of Title 28 of the United States Code Annotated and Sections 41, 43 and 47(3) of Title 8 of the United States Code Annotated and Section 1 of the Fourteenth Amendment to the Constitution of the United States.

The plaintiff, Jerry H. Watkins, is a citizen of the United States and a citizen of the State of Arkansas residing in the Hot Springs Division of the Western District of Arkansas.

The defendant, Oaklawn Jockey Club, is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business located in the City of Hot Springs, Garland County, and is the owner of a race track situated in Garland County which it has been operating for several years under a franchise from the State of Arkansas and a license issued by the Racing Commission of said State.

The defendant, I. G. Brown, is now and was at all times material to the controversy, the duly elected, qualified and acting Sheriff of Garland County, Arkansas, and the defendant, Earl (Birdie) Fulton, is now and was at all times material to the controversy a duly appointed, qualified and acting Deputy Sheriff of Garland County, Arkansas.

The plaintiff alleges that, subsequent to January 1, 1949, the defendants entered into a conspiracy to deprive the plaintiff of his civil rights and liberties as guaranteed to him under the laws and the Constitution of the United States, and that on the afternoon of March 12, 1949, the plaintiff purchased an admission ticket from the defendant, Oaklawn Jockey Club, for admission to the premises of the Oaklawn Race Track; that he paid the regular and customary admission fee of $1.00 and entered upon the grounds of said race track; that, while conversing with friends and acting in a lawful manner, he was approached by the defendant, Earl (Birdie) Fulton, acting in his capacity as Deputy

Sheriff and as agent, servant and employee of the defendant, Oaklawn Jockey Club, and the defendant, I. G. Brown, and stated to the plaintiff:

"Jerry, I have orders not to let you on this race track, and that if you did get on the track to place you under arrest and put you off."

Whereupon, the plaintiff asked the said defendant, Fulton, who had given him such orders, and was advised by Fulton that he had received such orders from the defendant, I. G. Brown. The plaintiff then advised the defendant, Fulton, that he had paid the admission fee to the race track and that he was conducting himself in a proper manner and had not violated any law. Thereupon the defendant, Fulton, stated:

"I know that is true but I have my orders and will have to carry them out."

That to his great embarrassment and humiliation the defendant, Fulton, arrested the plaintiff, deprived him of his liberty and forcibly ejected him from the race track; that the admission price paid by the plaintiff was not then and has not since been refunded to him, and the defendant, Fulton, told him not to again enter the race track or he would again arrest him and place him in the County Jail of Garland County, Arkansas.

That the said unlawful conduct of the defendants constituted a malicious and false arrest of the plaintiff, false and unlawful imprisonment of him and an unlawful deprivation of his liberty; that the said unlawful and tortious conduct of the defendants has caused the plaintiff great embarrassment and mental anguish.

That the wrongful arrest and imprisonment of the plaintiff by the defendants was actuated by malice, was willfully malicious and deliberate and without authority or process.

The plaintiff then prays for both actual and punitive damages.

On July 23, 1949, the defendants filed their answer to the complaint, in the first paragraph of which they allege:

"That the complaint does not state facts sufficient to constitute a cause of action under Sections 41, 43 and 47(3) of Title 8, United States Code Annotated, and Section 1 of the Fourteenth Amendment to the Constitution of the United States of America, and that by reason thereof jurisdiction of this action is not conferred upon this Court by Section 1343 of Title 28 of the United States Code."

The citizenship of the plaintiff and the defendants was admitted in the answer as alleged by plaintiff and as hereinbefore set forth. Likewise the defendants admitted that I. G. Brown is now and was on March 12, 1949, the duly elected, qualified and acting Sheriff of Garland County, and "that he was an agent of the defendant, Oaklawn Jockey Club, when he was not acting in his capacity as Sheriff of Garland County, but defendants deny that defendant, I. G. Brown, was a servant and employee of defendant, Oaklawn Jockey Club." The defendants further admit that the defendant, Earl (Birdie) Fulton was on March 12, 1949, a Deputy Sheriff of Garland County and "was the agent of defendant, Oaklawn Jockey Club when he was not acting in his capacity as Deputy Sheriff of Garland County, but defendants deny that defendant, Earl (Birdie) Fulton, was a servant and employee of defendant, Oaklawn Jockey Club."

In Paragraph 8 of the answer it is stated:

"That sometime during the racing meet held by defendant Oaklawn Jockey Club at Hot Springs, Arkansas, during the months of February and March of 1949, defendant Earl (Birdie) Fulton, acting for and in behalf of defendant Oaklawn Jockey Club, told plaintiff to leave the premises of the Oaklawn Jockey Club, whereupon plaintiff did leave said premises and refused tender of any money he may have expended to gain admission thereto. Defendants further state that on two occasions prior to this incident plaintiff had been advised, once by the defendant Earl (Birdie) Fulton and once by the defendant I. G. Brown, that he was not wanted on the premises of defendant Oaklawn Jockey Club and would not be allowed thereon during the racing meet than being held thereon."

On September 7, 1949, a pre-trial conference was held, at which time the issues were discussed and the Court suggested to the defendants that they file a separate motion to dismiss and incorporate therein that portion of their answer which alleges that the Court does not have jurisdiction of the case. Whereupon, a motion to dismiss "because the complaint fails to state a claim against the defendants upon which relief can be granted" was filed.

The attorneys for the defendants filed a brief in support of the motion to dismiss and the attorneys for plaintiff filed their brief against the motion to dismiss, and on September 27, 1949, the Court overruled the motion to dismiss.

Prior to the date of the trial, the plaintiff procured a subpoena duces tecum directed to Walter Schrader, agent for service of the defendant Club, requiring him to produce all books, records, canceled checks or other evidence of payment of any moneys by the Oaklawn Jockey Club, a corporation, to I. G. Brown of Hot Springs, Arkansas, and any contracts or other agreements in writing between the said Oaklawn Jockey Club and the said I. G. Brown entered into between October 1, 1948, and April 1, 1949.

The defendants filed a motion to quash the subpoena duces tecum, which motion was submitted to the Court and by the Court sustained. During the discussion of the motion to quash the subpoena, the defendants agreed to produce for the Court's examination all canceled checks representing funds paid to the defendant, I. G. Brown, for any purpose by the Oaklawn Jockey Club and further agreed "that the defendant, I. G. Brown, was the agent of the Oaklawn Jockey Club and ejected plaintiff, Jerry H. Watkins, from the premises of the Oaklawn Jockey Club under his authority as such agent and upon instructions from the defendant, Oaklawn Jockey Club."

The case proceeded to a trial before a jury on October 13, and the defendants furnished for the Court's examination all canceled checks which it had given to the defendant, I. G. Brown, for any purpose during the racing season of 1949. There were five checks, each for a certain sum of money representing the amount paid to I. G. Brown as compensation for himself and deputies and the expenses of certain members of the State Police Force for their services during the racing meet. The Court held that the checks were not admissible in view of the agreement on the part of the defendants that I. G. Brown was acting as the agent of the defendant, Oaklawn Jockey Club, at the time the plaintiff was ejected therefrom.

The testimony adduced at the trial revealed no conflicts and the facts are undisputed. They are as follows:

Jerry H. Watkins, the plaintiff, is the present Chief of Detectives of the Hot Springs, Arkansas, Police Department. He has been a police officer for twenty-two years, seventeen of which have been with the Police Department of Hot Springs. On March 9, 1949, he was retired on account of a physical disability, but that disability was removed or disappeared and he was later reinstated. He and two friends went to the Race Track on March 12, 1949, where the plaintiff paid the admission charges for himself and his two guests. They entered the premises and had proceeded a distance of several feet inside when he was accosted by the defendant, Earl (Birdie) Fulton, a Deputy Sheriff. Fulton advised him that he had orders to not permit him to enter the premises and that if he did enter the premises to eject him. The plaintiff requested permission to discuss the matter with the steward of the defendant, Oaklawn Jockey Club, was advised by Fulton that he had orders from the defendant, Sheriff I. G. Brown, to not permit him to remain, and the plaintiff was conducted to the entrance gate by the defendant, Fulton, and, in accordance with said request, left the premises. The plaintiff would not have left the premises if he had not known that Fulton was a duly appointed, acting and qualified Deputy Sheriff of Garland County, Arkansas.

The plaintiff was not violating the law in any particular at the time nor is there any testimony that he had ever violated the law in any manner while attending the races.

The plaintiff enjoys a national reputation as an able and efficient detective and his services have often been requested at meetings of national and even international importance. He was one of the two police officers from the South that was selected to serve at the meeting of the United Nations in San Francisco, California.

The plaintiff was humiliated in the presence of his friends by being requested to leave the premises. He did not physically resist being ejected from the premises and left only because of the request of the defendant, Earl (Birdie) Fulton, the Deputy Sheriff.

The plaintiff further said that he did not think that the President, Mr. John Cella, of the defendant, Oaklawn Jockey Club, ordered his ejection from the premises.

Matt Brown, a resident of Hot Springs, witnessed the removal of the plaintiff from the premises, and his testimony corroborates that of the plaintiff as to the occurrences at the time.

The defendant, I. G. Brown, testified that he was Sheriff of Garland County at the time and that he was employed by the defendant, Oaklawn Jockey Club, and received a sum of money each and every week the race meet was held for his services, the services of his deputies and for the expenses of the members of the State Police Force that were present; that he paid the expenses of the State Police Force from said sum of money and paid himself and deputies for their services to the defendant, Oaklawn Jockey Club. That he and his deputies had the right to carry arms on the premises and that they usually carried their pistols.

That on Sunday, February 20, prior to the opening of the race meet the next day, Monday, February 21, the President of the defendant, Oaklawn Jockey Club, gave him a list of names of persons with instructions not to permit any of them to enter the premises and, if they did enter, to eject them, and that the ejection of the plaintiff was because his name appeared on the list.

The witness also identified a newspaper article that appeared in the Sentinel-Record, published in Hot Springs on Friday morning, June 24, 1949, reading as follows:

"Sheriff Claims Suit Of Watkins Marks Freedom

"The $50,000 suit filed in Federal Court here yesterday by Jerry Watkins, Captain of Detectives with the City Police Department, and naming the Oaklawn Jockey Club, Sheriff I. G. Brown and his Deputy, Earl Fulton, as defendants, is viewed by the Sheriff as 'still further proof' that citizens of Garland County 'have been restored their rights and privileges by expressing themselves and their beliefs in our courts without intimidation and persecution.'

"The suit is the outgrowth of Watkins' ejection from the Oaklawn race track last March 12 by Fulton whom Watkins alleges in his complaint, was acting on orders from Brown.

" 'I can remember for many years when this kind of procedure would not have been permitted against a public official of this county,' Sheriff Brown declared last night. 'One cannot attempt to be a conscientious public official without having some individuals resenting his efforts.'

"He said further that 'I am sure that the facts will not be distorted when we reach the courts.' "

William S. Hall was introduced to testify as to the contents of a notice posted on the premises, but the parties agreed that there was posted on the premises a sign reading as follows:

"The Oaklawn Jockey Club prohibits tipping and touting and reserves the right to expel from its premises any person whose presence is deemed objectionable."

Mrs. B. L. Bates testified that she had heard various persons discussing the incident of the expulsion of the plaintiff from the race track.

The defendant, Earl (Birdie) Fulton testified that he saw the plaintiff a short time after he entered the Race Track premises on March 12, 1949, and touched him upon the shoulder or arm and advised him that

he would have to leave the premises; that he had orders from the Sheriff to not permit him to enter and that, if he did enter, to eject him; that he did not physically contact the plaintiff other than to place his hand on the plaintiff's arm and conduct him to the entrance, where the plaintiff left without any physical resistance; that he was acting under the orders of the Sheriff which he understood had been received from the President of the defendant, Oaklawn Jockey Club.

The defendants introduced no testimony other than that of the defendant, Earl (Birdie) Fulton, above set forth and, at the conclusion of the plaintiff's testimony, the defendants orally moved for a directed verdict but did not state the specific grounds therefor.

At the conclusion of all of the testimony, the defendants again orally moved for a directed verdict but did not state the specific grounds therefor. At the time, however, the Court stated in the presence of all the attorneys that it was advised of the grounds upon which the defendants were urging the Court to direct a verdict for the defendants.

Whereupon, the Court proceeded to discuss, in the absence of the jury and in chambers, the instructions that the Court proposed to give to the jury and advised the parties that they would have an opportunity to note their objections and exceptions to the instructions after they had been given and before the jury retired to consider its verdict.

The attorneys then proceeded to argue the case to the jury and the Court, at the conclusion of the argument, proceeded to instruct the jury and furnish to the attorneys for the parties a copy of the instructions in order that they might carefully follow the instructions that were read to the jury.

After reviewing the issues as made by the pleadings and the provisions of the applicable statutes and the Fourteenth Amendment to the Constitution of the United States, the Court said:

"It is seen, therefore, that there exists a cause of action for the deprivation by a State of any right secured by the Constitution and laws of the United States.

"Obviously, a State can act only through its officials. The officials with whom we are concerned are the defendants, I. G. Brown and Earl Fulton, the Sheriff and Deputy Sheriff, respectively, of Garland County. Any action taken by them under color of, under pretense of, or by virtue of their authority as such Sheriff and Deputy Sheriff, whether authorized or unauthorized, is to be considered state action for purposes of this case. Any action by them as agents of defendant, Oaklawn Jockey Club, or as individuals would not be under color of, pretense of or by virtue of their general authority as officers.

"As to the defendant, Oaklawn Jockey Club, it occupies no official position nor does it perform any official function so as to render its action, in the operation of the race track at Hot Springs, state action in this case. It is permitted to operate the race track by a license granted to it by the State of Arkansas, and it may, through its agents, prevent any person from entering the premises of the race track or eject any person therefrom after entry without depriving that person of any civil right, for the deprivation of which a cause of action may be brought under the Constitution and laws of the United States. The Constitution does not secure in any person the right to go upon or remain upon this or any race track, and under normal circumstances, the Oaklawn Jockey Club, in ejecting any person from its premises, would be acting in an individual capacity which would not constitute state action and would not be depriving that person of a right secured by the Constitution. Therefore, the Oaklawn Jockey Club would have no place in this lawsuit were it not for the allegation that it entered into a conspiracy or agreement with the other defendants to deprive the plaintiff of constitutional rights, and to carry out the conspiracy by having plaintiff arrested and ejected by defendants Brown and Fulton in their official capacities. In other words, it is alleged that this defendant, Oaklawn Jockey Club, by virtue of the conspiracy and overt act in furtherance thereof executed by defendants

Brown and Fulton, subjected or caused to be subjected the plaintiff to the deprivation of Constitutional rights.

"In the 14th Amendment, hereinbefore set forth, we find the following—'nor shall any state deprive any person of * * * liberty * * * without due process of law.' This is the right secured by the Constitution which the plaintiff alleges that he has been deprived of.

"Thus, the initial and paramount issue for your determination is, has the State of Arkansas through Brown and Fulton deprived this plaintiff of his liberty without due process of law?

"The specific acts relied upon by the plaintiff to constitute a deprivation of his liberty without due process of law, were a false arrest and false imprisonment of him, which, he alleges, occurred when defendant Fulton ejected him from the premises of the Oaklawn Jockey Club.

"Therefore, you must determine in what capacity the defendants Brown and Fulton were acting when the plaintiff was ejected. In making this determination you are to remember that the burden of proof is on the plaintiff to establish this, as well as all other, material allegation of his complaint by a preponderance of the evidence. A preponderance of the evidence means a greater weight of the evidence, and is not to be determined solely by the greater number of witnesses testifying in relation to any fact or state of facts. It means that the testimony on the part of the party on whom the burden rests must have a greater weight in your estimation, that is, have a more convincing effect than the testimony opposed to it.

If you conclude that the defendants Brown and Fulton were acting in their official capacities, then their acts would constitute state action, and the ejection or action in causing the plaintiff to leave the race track would be and constitute false imprisonment, and you should find the issues in favor of the plaintiff and against the defendants, Brown and Fulton.

"On the other hand, if you conclude that Brown and Fulton were acting as the agents of the Oaklawn Jockey Club, and were not acting in their official capacities as Sheriff and Deputy Sheriff, then this case is at an end, and you should find the issues in favor of all of the defendants.

"If you have concluded that the action of the defendants, Brown and Fulton, in ejecting the plaintiff from the race track was in their official capacities, then you should consider whether such action was the result of a conspiracy or agreement entered into between the defendant, Oaklawn Jockey Club, and said defendants, Brown and Fulton, or either of them, that the plaintiff should be arrested and ejected by said defendants in their official capacities.

"If you find from a preponderance of the evidence that the plaintiff was ejected by the defendants, Brown and Fulton, in their official capacities as a result of such conspiracy or agreement and caused by it, then you should find the issues in favor of the plaintiff and against all the defendants, for the defendant, Oaklawn Jockey Club, would have caused, by the agreement executed by the other defendants in their official capacities, the plaintiff to be subjected to a deprivation of a constitutional right within the provisions of the applicable statute.

"If you find the issues in favor of the plaintiff you will award him such a sum as actual damages as you find from a preponderance of the evidence will reasonably compensate him for the injuries received; including the sense of shame and disgrace endured by him, if any, and any other element which was the natural consequence of the injury the plaintiff received by the treatment of the defendants.

"If you find the issues in favor of the plaintiff, you may award him an additional sum as punitive damages, if you find from a preponderance of the evidence that the false imprisonment was imposed upon him as the result of wilful and malicious action on the part of the defendants."

In addition to the above the Court further instructed the jury as to its province in determining the credibility of the witnesses and the weight that should be given to their testimony, and that a unanimous verdict was required.

After the jury had been instructed but before it had retired to consider its verdict, the attorneys for the parties retired to the Chambers of the Judge and proceeded to dictate their objections to the instructions as given by the Court. At that time the defendants, for the first time, requested the Court to instruct the jury as follows:

"You are instructed that defendant Oaklawn Jockey Club had the lawful right to eject or cause to be ejected the plaintiff from its premises, with or without cause, and that it had the right to use or cause to be used whatever force was necessary for such purpose; therefore, if you find from a preponderance of the evidence that the plaintiff was ejected from the race track upon the instructions of the defendant Oaklawn Jockey Club, and that no more force was used than was necessary to eject the plaintiff from the track, then such action was for a lawful purpose and such ejection by lawful means, even if you find from a preponderance of the evidence that the plaintiff was arrested or threatened with arrest at that time, and your verdict shall be for the defendants."

The Court refused to give the instruction as requested since it had not been submitted or requested prior to the instruction of the jury and for the reason that it disregarded the question as to whether the defendants, Brown and Fulton, were acting in an official capacity and whether they were acting as a result of a conspiracy between themselves, or either of them, and the defendant, Oaklawn Jockey Club, in ejecting the plaintiff.

At the same time the plaintiff orally requested the Court to instruct the jury that the defendants had no right to eject the plaintiff from the premises without cause, and that the burden was upon the defendants to show that cause for his ejection existed, which request was refused by the Court.

The jury failed to reach a verdict and, after considering the case until Friday afternoon, October 14, were discharged by the Court without having reached a verdict.

As heretofore stated, the defendants filed the two motions now before the Court on Monday, October 17. The motion for judgment for defendants reads as follows:

"The defendants move the Court to enter a judgment for the defendants in accordance with the defendants' motion for a directed verdict and for grounds state:

"1. The plaintiff has failed to prove that such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of the Oaklawn Jockey Club was the result of a conspiracy to deprive the plaintiff of his liberty.

"2. The plaintiff has failed to prove that such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of Oaklawn Jockey Club was under color of state law.

"3. The plaintiff has failed to prove that such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of the Oaklawn Jockey Club was under color of, under pretense of, or by virtue of their authority as such Sheriff and Deputy Sheriff."

It is not necessary to set out in full the motion to dismiss, since it is simply a renewal of the original motion to dismiss that was overruled by the Court prior to the trial.

At the same time the defendants requested and the Court permitted them to file an amendment to their motions for a directed verdict that had been submitted at the conclusion of the plaintiff's testimony and again at the conclusion of all of the testimony, which amendment is as follows:

"By leave of the Court the defendants amend their motion for directed verdict, which was made upon the completion of the taking of the plaintiff's testimony and renewed upon the completion of the taking of all the testimony, to specify the following grounds for such motion:

"1. The plaintiff has failed to prove that such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of the Oaklawn Jockey

Club was the result of a conspiracy to deprive the plaintiff of his liberty.

"2. The plaintiff has failed to prove such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of Oaklawn Jockey Club was under color of state law.

"3. The plaintiff has failed to prove that such action as was taken by defendants Brown and Fulton in removing the plaintiff from the premises of the Oaklawn Jockey Club was under color of, under pretense of, or by virtue of their authority as such Sheriff and Deputy Sheriff."

The plaintiff objected to the action of the Court in granting permission to the defendants to amend their motions for a directed verdict but the Court, being of the opinion that no prejudice had or could have resulted to the plaintiff by reason of the failure of the defendants to state specifically the grounds for motions for a directed verdict, allowed the defendants to file the said amendment.

The amendment injected nothing new in the case as the court and counsel for all parties were well aware of the specific grounds upon which the two motions for a directed verdict were based, and therefore, the plaintiff was not prejudiced by allowing the proffered amendment to be filed.

The determination of the motion of defendants for judgment in accordance with their motions for a directed verdict submitted at the close of the plaintiff's testimony and again at the close of all the testimony requires a consideration of the testimony to determine whether there was presented any question of fact for decision by the jury. The views of the court as to the law in a proper case are reflected by the instructions given, but upon a thorough consideration of the testimony, the court has reached the conclusion that there is no question of fact presented by the testimony and that the jury should have been instructed to return a verdict for defendants.

█ In the beginning, the allegations of the complaint unquestionably conferred jurisdiction upon the court to at least determine whether the complaint should be dismissed for failure to state a claim upon which relief could be granted. Bell et al. v. Hood et al., 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. The motion to dismiss filed at the suggestion of the court was overruled because the court felt that under the allegations of the complaint it was conceivable that the plaintiff might establish facts which would justify the court, within its jurisdiction, to grant relief. This was, in the opinion of the court, in line with the very liberal test applied to complaints when challenged by a motion to dismiss, and the court felt that the allegations were at least sufficient to give the plaintiff an opportunity to establish a claim within the jurisdiction of the court if he could.

The present motion to dismiss presents no questions that were not determined by the former motion, and in accordance with the action taken on that motion, the present motion to dismiss should be overruled.

The plaintiff in his complaint relies upon Sec. 41, 43 and 47(3) of Title 8 U.S.C.A., and Sec. 1 of the 14th Amendment to the Constitution of the United States. It will be noted from the instructions that the court excluded Secs. 41 and 47(3) and submitted the case under Sec. 43 only. This was done for the following reasons.

The 14th Amendment contains three separate and distinct provisions guaranteeing rights of persons and property against violations by state action: (1) privileges or immunities of citizens of the United States; (2) due process; and (3) equal protection of the laws.

The plaintiff is a white man and no contention is made that class or racial discrimination is involved, so Sec. 41, guaranteeing equal rights to all persons within the jurisdiction of the United States as are enjoyed by white citizens, is inapplicable and passes out of the case.

Sec. 47(3) grants a cause of action for depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws. It does not include deprivations of life, liberty or property without due process of law. Mitchell v. Greenough et al., 9 Cir., 100 F.2d 184, 187.

█ The equal protection clause of the Amendment contemplates a purposeful and systematic discrimination designed to favor one individual or class over another. Snowden v. Hughes et al., 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497. Every unequal application of the law is not a denial of equal protection, and it is not contended here that the defendants purposefully discriminated against the plaintiff in favor of any other person or any other class. Therefore, the equal protection clause of the Amendment is not applicable to the instant case.

█ The privileges and immunities clause applies only to those privileges incident to citizenship in the United States. Snowden v. Hughes et al., supra. Certainly, all privileges granted to citizens by the Bill of Rights to the Federal Constitution against infringement by the Federal government have not been absorbed by the 14th Amendment as privileges incident to citizenship of the United States and by the privileges and immunities clause of that Amendment protected against infringement by the States. See, concurring opinion of Mr. Justice Stone in Hague et al. v. C. I. O. et al., 307 U.S. 496, at page 518 et seq., note 1 page 520, 59 S.Ct. 954, 83 L.Ed. 1423 for discussion and citation of authorities. Some of the more basic and fundamental rights have been absorbed by the privileges and immunities clause, Hague et al. v. C. I. O. et al., supra, but, in the opinion of the court, the privilege against false imprisonment by State officers is not a privilege peculiar to citizenship in the United States within the contemplation or protection of the privileges and immunities clause of the 14th Amendment, and therefore, that clause is not applicable to this case.

And, as Sec. 47(3) grants a cause of action for violations of the rights secured by the privileges and immunities and equal protection clauses only, it passes out of the case.

█ The proper basis for the plaintiff's claim is in the right secured and protected by the due process clause of the 14th Amendment, that no state shall deprive any person of liberty without due process of law. See, Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359. Of the sections of the civil rights statute relied upon by the plaintiff, Sec. 43 alone grants a cause of action for violations of rights secured by the due process clause of the 14th Amendment, and, in the opinion of the court, Sec. 43 is the applicable statute in this case.

█ The Oaklawn Jockey Club may exclude from its premises any person with or without cause. In doing so that defendant would at most subject itself to a cause of action for breach of contract when the admission price had been paid, provided, of course, it used no more force than was reasonably necessary in effecting the exclusion, but this court is not concerned here with such an action. Marrone v. Washington Jockey Club, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679, 43 L.R.A.,N.S., 961; Madden v. Queens County Jockey Club, 296 N.Y. 249, 72 N.E.2d 697, 1 A.L.R. 2d 1160. Furthermore, the fact that it operates the race track under a license from the State Racing Commission does not make it an administrative agency of the State and does not render its action in operating the track, and excluding or ejecting persons from the track, state action within the provisions of the 14th Amendment and Sec. 43 of Title 8 U.S.C.A. And, if it be assumed that its action in excluding the plaintiff was state action or under color of state law, the plaintiff obviously was not deprived of any constitutional right without due process of law, for the defendant has the right under the law to exclude him for any or no reason. Also, it is significant that we are not concerned here with the right of the plaintiff to enter the race track, for the 14th Amendment guarantees him no such right.

█ Section 43 does not in so many words grant a cause of action for a conspiracy to deprive one of his liberty without due process, but it is the opinion of the court that the language, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights," covers the situation whereby two or more persons conspire or agree to deprive another of a constitutional right

and that conspiracy or agreement is actually executed by a party to the agreement acting under color of State law. In other words, if the defendant, Oaklawn Jockey Club, conspired or agreed with the Sheriff, I. G. Brown, that the latter falsely imprison the plaintiff, and that conspiracy or agreement was carried out by Brown, acting as Sheriff, by actually falsely imprisoning the plaintiff, then the defendant, Oaklawn Jockey Club would have subjected or caused to be subjected the plaintiff to a deprivation of his liberty without due process of law.

■ Action of State Officers under pretense of law or action taken by virtue of the authority vested in them by the State, whether authorized or unauthorized, is action under color of law for purposes of Section 43. In regard to Section 20 of the Criminal Code, now 18 U.S.C.A. § 242, wherein similar language appears, the Supreme Court, in Screws v. United States, 325 U.S. 91, 109, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, 162 A.L.R. 1330, through Mr. Justice Douglas, stated:

"It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea."

The rationale of the Screws case in dealing with Section 20 of the Criminal Code is applicable to the section herein involved, Section 43 of Title 8 U.S.C.A. In Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 248, the court stated:

"The operative language of R.S. § 1979 (8 U.S.C.A. § 43), insofar as is material to the issues presented by this phase of the instant case, is identical with that of Section 20 of the Criminal Code. It follows that R.S. § 1979 must be construed as in pari materia with Section 20. The phrase 'under color of any statute * * *' employed in R.S.1979 must be construed as was the phrase 'under color of any law' in the Screws case." See, also: McShane v. Moldovan et al., 6 Cir., 172 F.2d 1016.

■ Every confinement of the person is an imprisonment, and any express or implied threat of force whereby one is deprived of his liberty or compelled to go where he does not wish to go is an imprisonment. Floyd v. State, 12 Ark. 43, 47, 54 Am.Dec. 250; 22 Am.Jur., False Imprisonment, Sec. 9. And, where there is an arrest without a warrant and imprisonment is proved or admitted, the burden of justification is upon the defendant. St. Louis, I. M. & S. R. Co. v. Waters, 105 Ark. 619, 626, 152 S.W. 137.

In being ejected, unquestionably plaintiff was imprisoned, for he was compelled to go where he did not wish to go, and therefore, it follows that the burden was upon the defendant Fulton to justify his action, for it is undisputed that Fulton was in fact a deputy sheriff, which fact was known to the plaintiff. Neither defendant Fulton nor the other defendants offered any justification for an arrest and imprisonment as officers, but sought to justify their action by evidence to the effect that Fulton was acting, not as deputy sheriff, but as agent of the defendant, Oaklawn Jockey Club. Therefore, if Fulton was acting as deputy sheriff, then no justification was made for the imprisonment, and it would follow as a matter of law that the imprisonment was unlawful, in which event the plaintiff would have been deprived of his liberty without due process of law. The court so instructed the jury.

As to the defendants, Brown and Fulton, the sole question sent to the jury was— in what capacity were the said defendants acting, official or individual? As previously stated, the jury was unable to agree, and the correctness of the court's action in submitting that question to the jury is now called into question by defendants' motion for judgment in accordance with their motions for a directed verdict.

■ In determining this question, the court, of course, must view the evidence

in the light most favorable to the plaintiff. This means in effect that if there is any substantial evidence which will support a verdict for the plaintiff, then defendants' motion must be overruled, and in this regard the court must assume as established all facts that the evidence reasonably tends to prove and draw in plaintiff's favor all inferences fairly deducible from such facts. The Traders and General Insurance Company v. Powell, 8 Cir., 1949, 177 F.2d 660.

The evidence shows that plaintiff was ejected from the race track operated by defendant, Oaklawn Jockey Club, by defendant Fulton, whom plaintiff knew to be a deputy sheriff. It is undenied that no more force was used than was reasonably necessary to accomplish the ejection. The evidence further shows that defendants, Brown and Fulton, were agents of the defendant, Oakland Jockey Club, and had orders to eject the plaintiff from the premises.

As heretofore stated, the defendant, Oaklawn Jockey Club has the right to eject any person from its premises with or without cause, and obviously, that defendant can eject undesirable persons only through its agents.

A verdict could be returned for plaintiff only if the defendants, Brown and Fulton, were acting in their official capacities and not as agents of the Oaklawn Jockey Club. If the jury were to so find, is there any substantial evidence to support such a finding?

■ Certainly, every act done by one, who is in fact an officer of the law, is not an official act or an act done under color of or by virtue of his authority as such an officer. As stated by Mr. Justice Douglas in Screws v. United States, supra, "Thus acts of officers in the ambit of their personal pursuits are plainly excluded." And, when there is shown an act by one who is in fact an officer, it presents a factual question as to whether that act was a personal or official one. In many and perhaps most of the cases the nature of the act itself conclusively establishes the category into which it falls, but this is not such a case. In effect, all the plaintiff has shown is the act itself, and neither the act nor the circumstances surrounding it are in any manner inconsistent with the explanation offered by defendants. Defendant Fulton did not tell the plaintiff that he was under arrest, merely stated to the plaintiff that he was to be ejected; Fulton did not use his gun in effecting the ejection; Fulton did not use excessive force, and in fact, used no actual force at all; Fulton did not take him to jail, and escorted him only to the gate; nor did defendant Fulton do anything that was in any way inconsistent with what any agent of the Oaklawn Jockey Club would have done when carrying out orders to eject a person from the premises. Under these facts and circumstances whatever evidentiary force the mere showing of the act, that is, the ejection by one who was in fact an officer, may have had in establishing the act as an official one is conclusively, and indeed, completely refuted.

■ Therefore, the court is of the opinion that there is no substantial evidence which would support a finding by the jury that the defendants, Brown and Fulton, were acting under color of law.

In view of this determination as to defendants, Brown and Fulton, it necessarily follows that the defendant, Oaklawn Jockey Club, could not be liable to plaintiff in this cause of action. The court is aware of the contention of that defendant that there is no substantial evidence to support a finding of such a conspiracy or agreement as would make it liable under Section 43, in that under the undisputed proof the defendant neither conspired to do nor did anything that it did not have a perfect right to do under the law. There is much force to this contention, but under the court's view of the evidence as to the defendants, Brown and Fulton, it appears unnecessary to consider it.

An order and judgment, in accordance with the above, sustaining defendants' motion for judgment in accordance with their motions for directed verdict and dismissing the complaint of plaintiff, should be entered.