**WHITTINGTON v. JOHNSTON et al.**

No. 14051.

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1953.

Rehearing Denied April 13, 1953.

Walter J. Knabe, Montgomery, Ala., W. R. Martin, Ozark, Ala., Hartwell Davis, Montgomery, Ala., for appellant.

E. C. Orme, Troy, Ala., J. M. Williams, Jr., Montgomery, Ala., Rushton, Stakely & Johnston, Montgomery, Ala., of counsel, for appellee.

Before BORAH, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This action, based upon 8 U.S.C.A. §§ 43 and 47(3), was brought to redress the alleged deprivation of plaintiff's civil rights, and to recover damages resulting from an alleged conspiracy to that end. The action was dismissed by the district judge for lack of federal jurisdiction.

The complaint charges in effect that the defendants below, all of whom are private citizens, acting under Title 15, § 432, and Title 45, §§ 208, 209 and 210, Code of Alabama, 1940, conspired to, and did, cause plaintiff to be declared insane by an Alabama probate court when she was in fact

sane, and caused her to be confined for five days in a county jail awaiting commitment to a mental institution, all without an opportunity to be heard. Plaintiff asserts she was thus deprived of her liberty without due process of law, contrary to the Fourteenth Amendment. There is no allegation that any of the defendants are, or that they acted as, officers of the State of Alabama.

■ The three conspiracy counts are based upon 8 U.S.C.A. § 47(3). That section, so far as here material, does not attempt to reach a conspiracy to deprive one of civil rights unless its object is a deprivation of equality,—of "equal protection of the laws," or "equal privileges and immunities under the laws". Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253. It does not purport to create a cause of action for conspiracies to deny due process. Yet the burden of the conspiracy counts is, not that the defendants conspired to deny plaintiff equality under the law, but that they conspired to deprive plaintiff of her liberty without due process. The two propositions are quite distinct. They are not equivalents. Mitchell v. Greenough, 9 Cir., 100 F.2d 184; McShane v. Moldovan, 6 Cir., 172 F.2d 1016; Allen v. Corsano, D.C., 56 F.Supp. 169. No facts are pleaded which show that plaintiff has been subjected to any inequality of treatment. There is no charge that by said proceedings she has been subjected to any different or greater hazard than any other person against whom the Alabama statutes might be invoked, nor that she was deprived of any right or immunity which might be enjoyed by any other person under the law. It is clear that the conspiracy counts state no cause of action under 8 U.S.C.A. § 47 (3). Collins v. Hardyman, supra.

The theory of the substantive counts based upon 8 U.S.C.A. § 43, is that the defendant Dr. Johnston, acting at the request of the other four defendants, signed a medical certificate that plaintiff was insane, based upon which she was declared to be insane by the state probate court without a hearing and was incarcerated pursuant to the Alabama statute. It is conceded that the lunacy proceeding followed the terms of the

statute, but it is contended that because the statute contains no mandatory provision for hearing the person whose sanity is questioned before a commitment is issued, and because no hearing was afforded the plaintiff in this instance, the defendants by invoking the statute and setting its procedure in motion, "caused" the plaintiff to be subjected by the State to a deprivation of her right to due process secured by the Fourteenth Amendment, within the meaning of 8 U.S.C.A. § 43.

In Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757, the Supreme Court of Alabama, one judge dissenting, sustained against a collateral attack by habeas corpus, the commitment of an allegedly insane person to the same institution, and under precisely the same statutes, here involved. The state circuit judge, before whom the habeas corpus proceeding originated, sustained the constitutionality of the statutes. The Alabama Supreme Court found it unnecessary to pass upon the question of due process in order to sustain the commitment. We also refrain from determining that question.

It is a *non sequitur* to say that merely by instituting the lunacy proceeding, the defendants "caused" plaintiff to be deprived of her right to due process within the meaning of 8 U.S.C.A. § 43. If there was any denial of due process, the efficient cause thereof was the omission of the state probate judge to give notice of the proceeding. That failure is not attributable to these defendants. Whether or not notice should be given is committed by the Alabama statute to the discretion of the probate judge. These defendants had no duty in that behalf. They simply instituted the lunacy proceeding as the Alabama statute authorized them to do, and left the conduct thereof wholly to the discretion of the probate judge whose duty and function it was to give any necessary notice.

■ In invoking the Alabama statute, defendants were entitled to act upon the presumption that the statute is valid, as it has not been authoritatively declared otherwise, and that in administering it the probate judge would proceed in accordance with the essential requirements of law. The mere institution of the lunacy proceed-

812

ing, without more, is too remote in the chain of causation to support an action under 8 U.S.C.A. § 43 for "causing" plaintiff to be deprived of the right to due process.

If plaintiff's contentions are correct, then one who invokes the jurisdiction of a state court in a lunacy proceeding acts at his peril, and becomes liable under 8 U.S.C.A. § 43 in the event it turns out that the statute under which the court acts, or the procedure followed by the state officers in administering it, do not satisfy the requirements of due process. To hold the defendants liable in such circumstances would impose upon them a vicarious liability not contemplated by 8 U.S.C.A. § 43. That statute does not require those who regularly institute a lunacy proceeding under a state statute to stand sponsor for the validity of the statute, nor for the acts of the state officers in administering it.[1]

Plaintiff alleges that in instituting the lunacy inquisition, the defendants acted willfully and maliciously. But this adds no strength to the complaint under 8 U.S.C.A. § 43. Neither the Fourteenth Amendment nor the Civil Rights Acts purport to secure a person against unfounded or malicious lunacy proceedings. If the facts here involved make out a case of false arrest or malicious prosecution, the redress of such wrongs is left with the states. Compare Lyons v. Weltmer, 4 Cir., 174 F.2d 473; McCartney v. State of West Virginia, 4 Cir., 156 F.2d 739.

We leave undetermined the question whether the complaint should have been dismissed "for lack of federal jurisdiction." Even if the allegations of the complaint bring it within federal jurisdiction, Compare Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383, the complaint clearly fails to state a claim for relief within the scope of 8 U.S.C.A. §§ 43 and 47(3), upon which it is expressly

based, for which reason it was proper to dismiss it.

Affirmed.

RIVES, Circuit Judge (dissenting).

I agree that a mere conspiracy, to fall within the ban of 8 U.S.C.A. § 47(3), must be "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws", or for some other purpose specified in that section, and which does not include a purpose of denying to a person due process of law. Collins v. Hardyman, 341 U.S. 651, 660, 71 S.Ct. 937, 95 L.Ed. 1253. Section 43 on the other hand protects against the deprivation under color of law "of any rights, privileges, or immunities secured by the Constitution and laws," and that, of course, includes the Fourteenth Amendment's provision, "nor shall any State deprive any person of life, liberty, or property, without due process of law".

The complaint charges that the defendants knowingly, willfully and maliciously conspired to have plaintiff wrongfully confined to the Bryce Insane Hospital while she was sane. That is not enough, but the complaint goes further. It charges that, under color of the laws of Alabama, the plaintiff was deprived of her liberty without notice to her and without giving her an opportunity of being heard or defending herself, and that the defendants "willfully, knowingly, wantonly, unlawfully, maliciously and wrongfully subjected and caused to be subjected the Plaintiff, a citizen of the United States and of the State of Alabama to the deprivation of rights, privileges, and immunities secured to her by the Constitution of the United States, Section 1 of the Fourteenth Amendment". The complaint seeks recovery under the Fourteenth Amendment and under the Civil Rights Acts, 8 U.S.C.A. §§ 43 and 47(3), and very

---

[1]. Compare also the principles decided in Bottone v. Lindsley, 10 Cir., 170 F.2d 705; Givens v. Moll, 5 Cir., 177 F.2d 765; Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242, 247; Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581; Campo v. Neimeyer, 7 Cir., 182 F.2d 115, 118, and McGuire v. Todd, 5 Cir., 198 F.2d 60, the latter against city officers. See also note, 13 A.L.R.2d 390, 471, and Adams v. Terry, 5 Cir., 193 F.2d 600, 605, second column; Taylor v. Smith, 7 Cir., 167 F.2d 797, 12 A.L.R.2d 1; note 14 A.L.R. 2d text page 1100 et seq.

clearly, it seems to me, brings the case within the jurisdiction of the federal court. Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939; Mitchell v. Greenough, 9 Cir., 100 F.2d 184, 185.

It is said, however, that the alleged claim under the Constitution and federal statutes is so patently without merit as to justify the court's dismissal for want of jurisdiction, because it is claimed that 8 U.S.C.A. § 43 does not cover acts by a private individual who is not a state officer. That claim cannot stand the test of comparison with the plain words of the statute:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 8 U.S.C.A. § 43.

It is significant that all the language which can be found that tends to restrict the operation of the Civil Rights Acts to officers comes from the cases and not from the statutes. The statute now under consideration employs the very broadest language to designate the persons covered. Formerly "any person" (see footnote 8, 325 U.S. 99), the expression is now "every person", 8 U.S.C.A. § 43.[1] When that expression can be constitutionally applied as written, it would be judicial legislation to change the word "person" to "officer".

This section, as it originally appeared, was Section 1 of "the Act of April 20, 1871, 17 Stat. 13 [28 U.S.C.A. § 1343] (the so-called Ku-Klux Act)" 325 U.S. at page 99, 65 S.Ct. at page 1034, 90 L.Ed. 939. Members of the original Ku Klux Klan to whom this statute was intended to have application were not necessarily officers. Indeed, the federal government was doing its best to exclude them from office.

"Color" of law means "pretense" of law "mere semblance of legal right", "appearance as distinguished from reality". Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368; Williams v. United States, 5 Cir., 179 F.2d 656; Id., 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774. In the Classic case the defendants were election officials required to count the ballots in a Democratic primary election. The Court said, "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." I do not think that there was any intention to say that only officers can act under "color of" law. In this Country a rigid officer class is foreign to our institutions, the private citizen takes an active part in the affairs of his government and is not uncommonly clothed with authority of law. For example, in many cases in Alabama a private citizen may make arrests, Alabama Code 1940, Title 15, § 158; Suell v. Derricott, 161 Ala. 259, 49 So. 495, 23 L. R.A.,N.S., 996; 4 Am.Jur., Arrests, Sec. 35.

The Alabama statute, Alabama Code 1940, Title 45, § 210, requires that before committing a person to the insane hospital, "the judge of probate shall examine witnesses, at least one of whom shall be a physician". The complaint charges that the defendant Dr. Johnston signed a medical certificate that plaintiff was insane without having made any examination of her, and that by his act in signing such certificate plaintiff was declared insane and deprived of her liberty without a hearing. The complaint thus charges Dr. Johnston with professional or "official" action necessary under Alabama law to the plaintiff's commitment.

Insane persons are committed to the state hospital in Alabama upon the application of "a relative, friend, or other party interested". Alabama Code 1940, Title 45, § 208. I think that it sufficiently appears from the complaint that the defendants other than Dr. Johnston come within the

1. It may be noted that the criminal counterpart, 18 U.S.C.A. § 242, uses an equally broad expression, "whoever".

classes permitted by Alabama law to institute the proceedings. In the present case, the physician and the friends, relatives and interested persons had authority to institute and prosecute the commitment proceedings. If they exercised that authority vested in them by law with a purpose of depriving the plaintiff of her liberty without due process of law and that result ensued, then, under the statute, 8 U.S.C.A. § 43, they are liable to the party injured.

Irrespective, however, of any direct official connection of any of the defendants with the commitment proceedings, it seems to me, under 8 U.S.C.A. § 43, that is not essential. That Act makes liable *"Every person* who, under color of any statute * * * of any State * * *, subjects, *or causes to be subjected,* any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws". (Emphasis supplied.) If the defendants caused the state officers to deprive the plaintiff of her liberty without notice to her and without giving her an opportunity of being heard or defending herself, they would be liable under 8 U.S.C.A. § 43.

Some meaning must be ascribed to the phrase "or causes to be subjected". As I understand the position of the majority, it is that only an officer can "cause to be subjected", that the "color of office" must clothe the initial causative wrongdoer as distinguished from the one whom he causes to act. It might be claimed that the order of the statutory language tends toward that position.[2] The criminal counterpart of the statute, now 18 U.S.C.A. § 242, formerly followed the same order of expression. See 341 U.S. 98, 71 S.Ct. 576, 95 L.Ed. 774, and Footnote 6, 325 U.S. 99, 65 S.Ct. 1031, 89 L.Ed. 1495.[3] That order is changed in the present Code, 18 U.S.C.A. § 242, and the place of the expression "or causes to be subjected" is omitted and supplied only by the general definition of a principal to any crime, 18 U.S.C.A. 2.[4] Up to the present time, however, it has not been suggested that any change in the meaning of the criminal statute was intended by the revision.

*Qui facit per alium facit per se* with the added element of willfullness thus aptly describes the rule made applicable to civil rights offenses, as well as to other federal crimes, by 18 U.S.C.A. § 2. Ordinarily, to constitute a crime more is required than to amount to a civil wrong; for example, in civil rights offenses the added "willfully". See 325 U.S. at 100, 65 S.Ct. 1031, 89 L. Ed. 1495. If one may commit the criminal offense through another, it is hard for me to see why he may not commit the civil wrong, especially in view of the alternative provision, "or causes to be subjected".

It is said, however, that the defendants merely instituted the lunacy proceeding and left its conduct to the state officers, that the defendants were entitled to act upon the presumption that the state officers would proceed in accordance with the essential requirements of law. If I could agree that that is all that the complaint charges, I would agree with the conclusion that, "The mere institution of the lunacy proceeding, without more, is too remote in the chain of causation to support an action under 8 U. S.C.A. § 43 for 'causing' plaintiff to be deprived of the right to due process." With deference, I submit that the allegations of the complaint charge more; they charge a willful and active participation by the defendants not merely in instituting the proceedings but in causing the plaintiff to be deprived of her liberty without due process of law. For example, some of the aver-

---

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected * * *." 8 U.S.C.A. § 43.

3. "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected * * *."

4. "Reference to persons causing or procuring was omitted as unnecessary in view of definition of 'principal' in section 2 of this title." Reviser's note to Sec. 242, Title 18 U.S.C.A.

Section 2(b) reads: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

ments of Count 3 are quoted in the margin.[5] Under the averments of the complaint it seems to me that the causal connection is not too remote between the wrongful acts of the defendants and the plaintiff's deprivation of her liberty without due process of law. The defendants willfully[6] caused the state statute to be used in such a manner as to deprive the plaintiff of her liberty without a hearing and without due process of law. The state statute was peculiarly susceptible of such misuse, because it did not give an alleged insane person an absolute right to notice and hearing before being committed, Ala. Code of 1940, Title 45, Sections 208, 210. In Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757, the Alabama Supreme Court, with one justice dissenting, pretermitted a decision on the constitutionality of those sections, and I do not think that such a decision is necessary in this case. It is sufficient to give rise to a cause of action under 8 U.S.C.A. § 43, that the acts of the defendants proximately caused state action depriving the plaintiff of her liberty without notice to her and without giving her an opportunity of being heard or defending herself.

Reverting for a moment to the ground of dismissal, the fact that the complaint is subject to the differing interpretations indicated emphasizes the error of the court in basing its order of dismissal on a lack of federal jurisdiction.

While the decided cases are not directly in point, it seems to me that they support the proposition that 8 U.S.C.A. § 43 covers acts by one not a state officer but done under color of state law.

In Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253, the defendants simply broke up plaintiff's meeting. "There is not the slightest allegation that defendants were conscious of or trying to influence the law, or were endeavoring to obstruct or interfere with it." 341 U.S. at page 661, 71 S.Ct. at page 942. The necessary "color" of law, present in this case, was absent in that. Further, the controversy arose under 8 U.S.C.A. § 47(3), 341 U.S. at page 652, 71 S.Ct. 937, rather than under 8 U.S.C.A. § 43, as here.

In McCartney v. State of West Virginia, 4 Cir., 156 F.2d 739, the principal insistence of the plaintiff was that he had a right to sue the State of West Virginia. He made some incidental complaint of lack of due process, but showed no apparent reason for a charge of lack of due process.

In Williams v. United States, 5 Cir., 179 F.2d 656, affirmed 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774, a private detective who held a special police officer's card issued by

5. "The Defendants, under color of laws, statutes, customs, or usages of the State of Alabama, Code of Alabama of 1940, Title 15, Section 432, and Title 45, Sections 208, 209, 210, on, to-wit: January 5, 1951, in the Northern Division of the Middle District of Alabama, willfully, knowingly, wantonly, unlawfully, maliciously, and wrongfully subjected and caused to be subjected the Plaintiff, a citizen of the United States and of the State of Alabama to the deprivation of rights, privileges, and immunities secured to her by the Constitution of the United States (Section 1 of the Fourteenth Amendment); that is to say to-wit that during all of the time herein referred to Plaintiff was sane but, that on, to-wit January 5, 1951, at Troy, Alabama, the Defendants, under color of Code of Alabama, Title 15, Section 432, and Title 45, Sections 208, 209, and 210 did cause Plaintiff to be declared insane, and to be ordered committed to Bryce Insane Hospital, all without notice to her, and without giving her the opportunity of being heard or defending herself and thereby caused her to be arrested and confined in the County jail of Pike County, Alabama, while awaiting incarceration in said Bryce Insane Hospital, from January 5 to 9, 1951, inclusive, a period of five days time, and in so doing, did subject and cause to be subjected the Plaintiff to the deprivation of her liberty without due process of law and in violation of her rights, privileges, and immunities secured to her by the Fourteenth Amendment of the Constitution of the United States, all without right or cause * * *."

6. Willfullness is not required to support a civil action under 8 U.S.C.A. § 43, but when averred, as here, it may have a bearing upon causal connection. "The intentional tort, of course, creates liability for consequences which were intended." 38 Am.Jur., Negligence, Sec. 52.

the City of Miami, Florida, and had taken an oath and qualified as a special police officer, when showing his badge and accompanied by a regular policeman was held to be acting "under color" of law within the meaning of 18 U.S.C.A. § 242, or at least that the jury could properly so find. Significantly the Supreme Court said: "Moreover, this was an investigation conducted under the aegis of the State, as evidenced by the fact that a regular police officer was detailed to attend it." 341 U.S. at pages 99, 100, 71 S.Ct. at page 578, 95 L.Ed. 774. Likewise, this Court, in the course of its opinion, said:

"In the present case the policeman, Ford, although not in uniform, was present in an official capacity as a policeman of the City of Miami, acting under the authority of the City, and giving, under our holding in Crews v. U. S., [5 Cir., 160 F.2d 746], supra, official color to the investigation. * *

"Ford was sent to the scene by a superior police officer of the City of Miami. Williams, the appellant, who personally committed most of the assaults and did most of the beating, did so in the presence of this duly constituted, or lawful, officer, who at least, lent color of law to the occasion." 179 F.2d 656, 660.

In Charlton v. City of Hialeah, 5 Cir., 188 F.2d 421, the complaint failed to name the individual officers of the municipality with whom the defendant Faircloth conspired. The Court held that the civil rights statute, 8 U.S.C.A. § 43, did not create a liability on the part of a municipality or of one who conspired with no individual but with the municipality. It seems to me clearly indicated that a charge that Faircloth conspired with officers of the law would have brought the case within the statute.[7]

In United States v. Lynch, D.C., 94 F. Supp. 1011, 1013, affirmed by this Court on an appeal by the sheriff and deputy sheriff in Lynch v. United States, 5 Cir., 189 F. 2d 476, District Judge Hooper said in the course of a well considered opinion, 94 F. Supp. at page 1013:

"*Violation of Civil Rights Statute by Private Individuals*. It was insisted by movants that the six named defendants who were not officers of the State could not violate this civil rights statute because it related only to deprivations by a state. True, Section 242 was enacted pursuant to the Fourteenth Amendment and relates to deprivations by states (acting through state officials) and not to acts of private individuals. It does not follow, however, that private individuals cannot be guilty as principals if they aid and abet state officers in such violations. Section 2, Title 18, United States Code annotated.

"Thus, in the case of United States v. Trierweiler, D.C., 52 F.Supp. 4, the court pointed out that it is immaterial that a private citizen may not have the capacity to commit the offense, if he aids an officer to do so. In other civil rights cases under Section 242 private individuals have been joined as defendants. Williams v. United States, 5 Cir., 179 F.2d 644; Williams v. United States, 5 Cir., 179 F.2d 656. The same principle is applied in other cases. Haggerty v. United States, 7 Cir., 5 F. 2d 224 (aiding a prohibition agent); United States v. Orr, D.C., 223 F. 220 222 (aiding a manufacturer of olemargarine)."

See also Valle v. Stengel, 3 Cir., 176 F. 2d 697; McShane v. Moldovan, 6 Cir., 172 F.2d 1016; Picking v. Pennsylvania Railroad Company, 3 Cir., 151 F.2d 240; Robeson v. Fanelli, D.C., 94 F.Supp. 62; Wat-

---

**7.** "The complaint fails to name any individuals or officers of the municipality with whom the defendant Faircloth conspired. The reasonable deduction is that, since he conspired with no individual, he must have conspired with the municipality. It is easy to understand how officers exercising the authority delegated to a town or city might, in their individual ca-

pacity, be a party to a conspiracy; but a municipal corporation, which is limited by law to the purposes and objects of its creation, namely, the maintaining and exercising of the powers of local government, cannot in its sovereign or municipal capacity be a party to a conspiracy." 188 F.2d 421, 422.

kins v. Oaklawn Jockey Club, 8 Cir., 86 F. Supp. 1006, affirmed, 8 Cir., 183 F.2d 440.

With deference, it seems to me that the decision in the present case constitutes a serious abridgment of the protection provided by Congress to the constitutional rights, privileges and immunities of citizens of the United States, and I, therefore respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.