James Edward STRIKER, Plaintiff-Appellant,

v.

Paul PANCHER and The National Surety Co., Defendants-Appellees.

No. 15071.

United States Court of Appeals Sixth Circuit.

May 20, 1963.

Clifford F. Brown, Norwalk, Ohio, for appellant; Hugh M. Rust, Mansfield, Ohio, on the brief.

Jack F. Smith, Cleveland, Ohio, for appellees; Richard C. Green, Cleveland, Ohio, on the brief for Paul Pancher; Jack F. Smith, Cleveland, Ohio, on the brief for National Surety Co.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and PRETTYMAN,* Senior Circuit Judge.

PRETTYMAN, Senior Circuit Judge.

Our appellant Striker was indicted for grand larceny in Tuscarawas County, Ohio, in 1952. He pleaded guilty. He also waived the statutory penalty of from one to seven years in the state reformatory. The Court of Common Pleas of the County sentenced him to a fine and a few more days in the County jail, he having been in the jail some four months awaiting trial. At the same time, the court also ordered that upon his release from jail he should be on probation for five years, and in case of violation of the rules of probation the statutory sentence was to be "invoked." Striker "walked away" from the jail sentence. He was arrested in Missouri, the one to seven year sentence was entered, and he was imprisoned in the state reformatory. In 1957 Striker was ordered released by the United States District Court for the Northern District of Ohio upon a writ of habeas corpus. The basis for the grant of the writ was lack of due process, chiefly in that at the time of his plea and sentence Striker, then nineteen years of age, had had no counsel and had not been informed of his right to counsel.

At the time of his confinement in the County jail in 1952 the sheriff in charge of the jail and its prisoners was one Paul Pancher, defendant-appellee here. In August of 1958, after his release, Striker sued Pancher and his bonding company for $250,000 money damages, upon the ground that Pancher, acting under color of statutes of Ohio and rules, regulations, customs and usages of the County Court, had subjected Striker to a deprivation of rights secured to him by the Constitution. He relied upon Section 1343 of Title 28 of the United States Code and Section 1983 of Title 42. Defendants moved to dismiss the complaint for lack of jurisdiction. The motion was reserved, and upon completion of the trial the court directed a verdict for de-

---

* Sitting by designation from the District of Columbia Circuit.

fendants. Thereupon, instead of entering judgment upon the verdict, the court dismissed the action "upon a verdict of the jury, by direction of the Court."

Striker alleged that his plea of guilty was upon the advice, counsel and insistence of Pancher, the sheriff. Upon the trial on the complaint, Striker testified. Since the precise facts are important to our decision, we relate his account in some detail.

Striker testified that during the time he was in custody at the County jail and was in the sheriff's car going from the jail several miles to the latter's house to do some work there, Pancher said to him: "Jim, you been in jail just about long enough. If you go up there and plead guilty that's all there will be to it. If you go there with an attorney you're going to find yourself in a lot of trouble." Again, on another occasion in the sheriff's car, Striker testified, Pancher said, "James, you plead and I will go talk to Mr. Johnson [the prosecutor] and I promise you you will get off with a light sentence. That's all there is to it." Striker said on direct examination that these were the only times Pancher talked to him about pleading. He said he never received a copy of his indictment. He said that while in custody he was "unlocked" from about eight or nine o'clock in the morning until about nine or ten o'clock at night. He did not know he could have a lawyer and had no money with which to employ a lawyer. Nobody told him he had a right to a lawyer. He did not know the difference between petty larceny and grand larceny. He did not know that petty larceny (value of $60 or less) carried a county jail sentence and no more than a $90 fine, and that the sentence for grand larceny was one to seventeen [sic] years in the state reformatory. Striker testified he had needed some money and "went and took" the scrap iron, put it in his car, and next morning took it to a junk yard, where he was arrested. He said the scrap was junk and weighed about 300 pounds. He was going to get $7.50 for it, he said.

On cross examination he said he had done this several times and did not consider it stealing.

On cross examination the following occurred:

"Q. Did he [Pancher] threaten you?

"A. He never threatened me in any way.

\* \* \* \* \* \*

"He told me how to plead.

"Q. How did he intimidate you?

"A. Well he advised me, and I took his advice.

"Q. He advised you?

"A. Yes.

"Q. But through no threats?

"A. No threats whatsoever.

\* \* \* \* \* \*

"He just advised me, and he never —Mr. Pancher never threatened me in any way, never."

In the course of the cross examination Striker said Pancher advised him several times, maybe eight or nine times. He said Pancher told him to throw himself on the mercy of the court.

In an extract from Striker's prior testimony, attached as an exhibit to defendants' answer in the present case, Striker said he was in the County jail a week or so after his sentence.

"Q. Then you left jail, did you?

"A. Yes. I was a trustee [sic] and I got kind of mad that day. I could go out in the evening, too, if I wanted to, and they finally left me out and I said, 'I am not coming back in any more; and walked away.'"

The trial court directed a verdict for the defendant sheriff and the bonding company. Striker appealed. That appeal is now before us.

Section 1983 of Title 42 of the Code provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

So the question at bar is whether Sheriff Pancher, under color of a statute, regulation, custom or usage, subjected, or caused to be subjected, Striker to the deprivation of his rights to due process, especially the right to counsel when he pleaded guilty in the County Court.

Striker rests his case squarely upon Monroe v. Pape.[1] In that case the Supreme Court reexamined at length the meaning of the phrase "under color of" and the purport of this statute, and it adhered to the view it had theretofore expressed in the Classic[2] and Screws[3] cases. The Court summarized its view by a brief quotation from the opinion in the Classic case. It said: "In an opinion written by Mr. Justice (later Chief Justice) Stone, in which Mr. Justice Roberts, Mr. Justice Reed, and MR. JUSTICE FRANKFURTER joined, the Court ruled, 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.' "[4]

We shall not attempt any critical analysis of the pronouncement of the Court in Monroe v. Pape, because in our view the case now before us is so many steps removed from the doctrine there laid down that it falls well beyond any possible periphery of application. Many features of the present case so dictate. Pancher did not directly deprive Striker of any right of any sort. He had no authority or shadow of authority in respect to the trial. It is not claimed that any statute, custom or usage gave Pancher any authority in respect to the trial, or imposed upon him any duty to inform Striker as to his rights upon the trial. The failure to inform him and the failure to furnish counsel was a failure in the judicial process. The "color of authority" which was upon Pancher in this respect was merely the aura which surrounded him as an officer of the law, in the executive rather than in the judicial branch. Pancher advised Striker what to do. And the fact is that the advice was good. Striker was faced with an indictment for an offense which, upon conviction, would have carried a statutory penalty of one to seven years in the state reformatory. The court, upon his plea, permitted him to "waive" that penalty and, instead, gave him a short sentence in the County jail. The subsequent imposition of the statutory penalty arose from Striker's own action in "walking away" from his jail sentence, in violation of the terms of his probation. It is not claimed that Pancher had any part in these latter events. Pancher did not mistreat Striker. He did not threaten him; Striker so asserted vigorously.

Striker was guilty of the offense of taking the property which was not his. It was either petty or grand larceny. The sentence he would have served had he not "walked away" was not the penalty for grand larceny; it must have been for petty larceny, and of that he was admittedly guilty.

It must also be kept in mind that at the time these events occurred (1952) the law as established by the Supreme Court was that a person accused of larceny in a state court had no constitutional right to counsel. Betts v. Brady[5] has since been overruled,[6] and the law as announced in the later case

1. 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
2. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).
3. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).
4. Supra note 1, 365 U.S. at 184, 81 S.Ct. at 482.
5. 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).
6. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

must be viewed as the law in the prior period. But we think this does not mean that failure to appoint counsel in a larceny case in 1952 was such a deprivation of a constitutional right as to subject the state authorities to personal liability for damages under the statute here involved. Much less does it mean, in our view, that a sheriff who in that period advised a defendant to plead guilty so as to obtain a less sentence deprived that person of a constitutional right. We keep in mind that we are not considering the validity of the judgment of conviction by reason of the failure to furnish the defendant the benefit of counsel. Such failure, although in a background of good faith, nevertheless invalidates the judgment. Gideon v. Wainwright, supra note 6. The habeas corpus proceeding related to that subject. Our question is a different one, namely, whether, in addition to invalidating the judgment of conviction, such failure also automatically constitutes a violation of the civil rights statute, under which this civil action for damages was instituted. We think such a result does not automatically follow and does not follow here.

█ This statute is aimed at reprehensible action on the part of the defendant in the civil action authorized by it. "Misuse" of power and "wrongdoer" were the terms used by the Court in the Classic case, supra, and repeated in Monroe v. Pape. The cases bear out this view. Thus in the Sutherland case [7] a state officer extorted a confession by assault and torture. In Culp [8] a state officer without cause arrested certain persons for the purpose of extortion.

In Pullen [9] an officer beat a prisoner. In Classic, supra, state election officials willfully altered and falsely counted and certified ballots. In Williams [10] a special police officer obtained a confession by force and violence. In Crews [11] a constable badly beat a person in custody and forced him to jump to his death in a river. In Catlette [12] a deputy sheriff forced some detained persons to drink several ounces of castor oil, tied them with rope, and marched them publicly through the streets. In Koehler [13] a constable badly beat and threatened to kill a prisoner. In Egan v. City of Aurora,[14] the defendants in the action were police officers who arrested the mayor of the city while he was holding a public meeting and detained him for several hours. They were alleged to have forcibly deprived him of his right of free speech and assembly.

Pancher did not misuse power, nor was he a wrongdoer in any normal sense of the word. He was obviously attempting to be helpful. Had he threatened Striker, or falsely advised him, or pressured him in some fashion, or tricked him, perhaps we would have a different case. We have no such case. We think we must deal with the realities of the situation, just as the Supreme Court did when it had Monroe v. Pape before it.

We leave undetermined the question whether the complaint should have been dismissed for lack of federal jurisdiction. As we have shown, the plaintiff failed to state a cause of action. We follow the Seventh Circuit in this respect.[15]

7. United States v. Sutherland, 37 F.Supp. 344 (N.D.Ga.1940).

8. Culp v. United States, 131 F.2d 93 (8th Cir. 1942).

9. Pullen v. United States, 164 F.2d 756 (5th Cir. 1947).

10. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951).

11. Crews v. United States, 160 F.2d 746 (5th Cir. 1947).

12. Catlette v. United States, 132 F.2d 902 (4th Cir. 1943).

13. Koehler v. United States, 189 F.2d 711 (5th Cir. 1951).

14. 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961), affirming in part and vacating and remanding in part 275 F.2d 377 (7th Cir. 1960) on authority of Monroe v. Pape.

15. Whittington v. Johnston, 5 Cir., 201 F. 2d 810, 812, cert. denied, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377 (1953). See also Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955) ; Truitt

We are of opinion that the District Court correctly dismissed the action. Its judgment, therefore, is

Affirmed.

v. State of Illinois, 278 F.2d 819, 820 (7th Cir. 1960) ; Douglas v. Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L. Ed. 1324 (1943).