Henry HEBERT, Plaintiff,

v.

Frank MORLEY, William P. Veditz, John R. Eckstein, James Patric Brady, and Harold Kade, Defendants.

No. 65–165.

United States District Court C. D. California.

July 26, 1967.

John Alan Montag, Los Angeles, Cal., for plaintiff.

Robert G. Cockins, City Atty., and Robert D. Ogle, Asst. City Atty., City of Santa Monica, Santa Monica, Cal., for defendants Veditz, Morley, Eckstein, and Brady.

Harold W. Kennedy, County Counsel, and Irvin Taplin, Jr., Deputy County Counsel, Los Angeles, Cal., for defendant Harold Kade, M.D.

HAUK, District Judge.

The complaint herein adequately states a claim under Section 1 of the Civil Rights Act of 1871, 42 U.S.Code § 1983,[1] because it alleges facts which show that the defendants: (1) while acting under color of state statute, ordinance, regulation, custom or usage, (2) subjected, or caused to be subjected, a person within the jurisdiction of the United States to the deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States. Cohen v. Norris, 300 F.2d 24, 30 (C.A. 9th 1962); Marshall v. Sawyer, 301 F.2d 639, 643 (C.A. 9th 1962); Lucero v. Donovan, 354 F.2d 16, 19–20 (C.A. 9th 1965); Lucero v. Donovan, 258 F.Supp. 979, 980 (C.D.Cal. 1966).

Moreover the complaint sufficiently sets forth a claim under Section 2 of the Civil Rights Act of 1871, 42 U.S.Code § 1985(3)[2] because it alleges the necessary two additional elements: (1) that the defendants conspired or acted jointly or in concert; and (2) that overt acts were done pursuant to the conspiracy which damaged plaintiff. Hoffman v. Halden, 268 F.2d 280, 294 (C.A. 9th 1959); Cohen v. Norris, 300 F.2d 24, 27–28 (C.A. 9th 1962). It follows that this Court has jurisdiction by virtue of 28 U.S.Code § 1331(a), the Federal question jurisdiction;[3] and under 1343

---

1. "§ 1983. *Civil Action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. "1985. *Conspiracy to interfere with civil rights—Preventing officer from performing duties*
   *Depriving persons of rights or privileges*

(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

3. "§ 1331. *Federal question; amount in controversy; costs*

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States."

(1),[4] 1343(3),[5] 1343(4),[6] which give District Courts original jurisdiction of civil actions to recover damages and secure redress by way of equitable and other relief for deprivation of Constitutional and civil rights, whether resulting from conspiracy or direct acts

    Cohen v. Norris, 300 F.2d 24, 26 (C.A. 9th 1962);

    Monroe v. Pape, 365 U.S. 167, 169, 81 S.Ct. 473, 474, 5 L.Ed.2d 492, 495 (1961);

    Lucero v. Donovan, 258 F.Supp. 979, 980 (C.D.Cal.1966).

Plaintiff alleges that the defendants, under color of State law, unlawfully arrested him and engaged in a conspiracy to deprive him of his liberty without due process of law, in violation of the United States Constitution, and particularly the Fourth Amendment (arrest without probable cause), the Fifth Amendment (deprivation of liberty without due process of law) and the Fourteenth Amendment (deprivation of liberty without due process of law and denial of equal protection of the law).

The complaint as against Harold Kade, M.D., the Los Angeles County autopsy surgeon and deputy coroner, was dismissed before trial on a motion for summary judgment, the Court finding that at all times mentioned in the complaint he had acted reasonably and within the permissible discretion of his official capacity, and was therefore immune from the charges of the complaint.

▮▮ This order for summary judgment in favor of Dr. Kade was based,

of course, upon the traditional immunity from suit granted by the common law to a public official engaged in discretionary activities, reasonably performed within the appropriate scope of his official authority and capacity. Here Dr. Kade had full and complete statutory authority and capacity, as holder of the public office of autopsy surgeon and deputy coroner, to conduct the autopsy, make the findings and report his opinions exactly as he did in the course of his duties.[7]

Dr. Kade's activities complained of by plaintiff consisted of his autopsy made upon the body of a person who had died after a fall in a bar fight with plaintiff and a later fall at the Santa Monica police station; his set of findings and opinions that the primary cause of death was the blows and fall at the bar; his expression of these findings and opinions to the police officers investigating the death; and his testimony at plaintiff's trial for murder in the course of which Dr. Kade as an expert stated his opinion that the blows and fall the deceased had suffered in the bar fight with plaintiff could have caused the death.

When the activities of Dr. Kade were measured by his statutory discretion, and the scope of his official authority, capacity and duties as deputy coroner and autopsy surgeon, the Court necessarily found his immunity from suit so compelling that as a matter of law he was dismissed from the action.

Long since has the Ninth Circuit granted immunity to physicians in public office, effectively protecting against

---

4. "§ 1343.  *Civil rights and elective franchise*

    The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

    (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;"

5. "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right,

privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

6. "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

7. Calif.Gov.Code, Sections 27491–27491.6, which outline in detail the discretionary authority, official responsibility and mandatory duties of county deputy coroners and autopsy surgeons such as Dr. Kade.

civil rights suits the following: County health officers and their deputies, State mental hospital superintendents, staff physicians at State hospitals, and even private physicians making examinations and testifying in court proceedings for mental illness commitments. Hoffman v. Halden, 268 F.2d 280, 298–300 (C.A. 9th 1959).

The same protective shield of immunity to suit has been raised for physicians, not only State and County medical officers and members of institutional medical staffs but also private physicians engaged in examination or testimony on behalf of the State or the Courts in commitment proceedings, in at least three other Circuits: the Sixth,[8] the Seventh,[9] and the Eighth.[10] And, as might be expected, the District Courts have both set and followed the clear trend of immunity for physicians engaged in official or quasi-official duties, for example, Judge Delehant in the District of Nebraska[11] and Judge Kent in the Western District of Michigan.[12]

After the dismissal of Dr. Kade, the case came to trial before the Court without a jury on June 22, 1967, jury having been expressly waived by all parties. At the conclusion of plaintiff's case, on motion of defendants Eckstein and Brady, the Court ordered the case dismissed as to them, plaintiff having introduced no evidence relating to these police officers.

The trial concluded on June 23, 1967, and the Court now makes its Decision, Findings of Fact, and Conclusions of Law in favor of the remaining police officer defendants, Veditz and Morley.

On February 13, 1962, in the early morning, shortly after midnight of the 12th, in a Santa Monica bar, plaintiff grabbed one Charles Swallow by the shirt as he was sitting at the bar and struck Swallow twice with his fist in the face. This was without any provocation, except certain racially insulting remarks made by Swallow. Swallow was knocked to the floor, his head hitting with a "thud". He remained on the floor in a semiconscious condition until defendant Veditz, a Santa Monica police officer, arrived at the scene shortly after the incident. Plaintiff told Veditz he acted in self-defense.

Veditz escorted plaintiff outside the bar where he was placed in the custody of defendant Morley, another Santa Monica police officer, who had just then arrived at the scene. Morley questioned plaintiff briefly and then locked him in a police car in front of the bar.

In the meantime Veditz returned to the bar, saw a small amount of dried blood below Swallow's nose as he still lay on the floor, and formed an opinion that Swallow was intoxicated.

About this time Morley came into the bar and the two officers assisted Swallow to a police car. While Swallow was

8. Kenney v. Fox, 232 F.2d 288, 290 (C.A. 6th 1956), cert. den. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956), covering the medical superintendent of a state mental hospital and staff physicians; Bartlett v. Weimer, 244 F.2d 955, 956 (C.A. 6th 1957), cert. den. 355 U.S. 858, 78 S.Ct. 87, 2 L.Ed.2d 65 (1957), covering a physician acting as an examiner in a mental illness case under court order.

9. Bartlett v. Weimer, 268 F.2d 860, 862 (C.A. 7th 1959), cert. den. 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960), again a physician acting as an examiner in a mental illness case under court order.

10. Rhodes v. Houston, 309 F.2d 959 (C.A. 8th 1964) aff'g 202 F.Supp. 624 (D. Neb.1962), cert. den. 372 U.S. 909, 83

S.Ct. 724, 9 L.Ed.2d 719 (1963), covering all prison officials and, by necessary implication, all staff physicians.

11. Rhodes v. Houston, 202 F.Supp. 624, 635–636 (D.Neb.1962), aff'd 309 F.2d 959 (C.A. 8th 1962), cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 719 (1963), all prison officials and impliedly all staff physicians; Rhodes v. Meyer, 225 F. Supp. 80, 107 (D.Neb.1963), medical officer on staff of state penitentiary; Rhodes v. Van Steenberg, 225 F.Supp. 113, 131–132 (D.Neb.1963), prison officials and impliedly staff physicians.

12. Kenney v. Hatfield, 132 F.Supp. 814, 818 (W.D.Mich.1955), aff'd sub nom. Kenney v. Fox, 232 F.2d 288, 290 (C.A. 6th 1956), medical superintendent of state mental hospital and staff physician.

being taken by Morley directly to the Santa Monica jail booking area, Veditz had a short conversation with plaintiff in the other police car and then released him.

In the Santa Monica jail Swallow was placed at the booking window where he appeared to be conscious and able to stand in a steady manner, holding on to a wire mesh screen with both hands.

While Swallow was being searched by Morley he had a sudden seizure, became completely rigid, and fell over backwards, striking his head on the floor. He was not moved until an ambulance arrived a few minutes later. In the meantime, superior officers were notified, photographs were taken of Swallow in the position where he fell and a report of the circumstances surrounding the fall in the jail was made and filed.

Swallow was taken to the Santa Monica Emergency Hospital and then to the Los Angeles County General Hospital, where he died about 10:00 a. m., February 13, 1962, from head injuries.

Two County autopsy surgeons who examined the deceased concluded that the primary cause of the death was the blows and the fall the deceased suffered at the bar.

With this knowledge and shortly before midnight on February 13, 1962, Officer Veditz saw plaintiff on the street in Santa Monica and asked him to go with him to police headquarters for questioning.

Plaintiff was not placed under arrest at this time but voluntarily went along with Officer Veditz, was interrogated for about one-half hour at police headquarters, and was then placed under arrest by Veditz for violation of California Penal Code § 187, "murder", at 10:30 a. m. on the morning of February 14, 1962.

Before Veditz made this arrest, he had talked to an eyewitness at the bar, Edna Schwing, who stated that plaintiff had assaulted her at the bar, tearing some buttons on her blouse, and had then approached Swallow and without any provocation on Swallow's part, struck Swallow twice in the face, knocking him to the floor.

At about 8:00 p. m. on February 13, 1962, also prior to arresting plaintiff, Veditz called the County Coroner's office and during the conversation was informed that the blows received by Swallow and his fall at the bar probably caused the seizure in the jail, which, in turn, caused the jail fall that eventually led to Swallow's death.

Moreover, during the interrogation plaintiff made statements inconsistent with his previous statements to Veditz, admitting that he had struck Swallow with his fist, and that Swallow had not pulled a knife on him just before he struck the blows, contrary to what he had told Veditz and Morley when questioned at the time of the incident at the bar.

At all times the officers were acting within the scope and course of their official duties as police officers.

These facts were presented to the Los Angeles County District Attorney who issued a complaint against plaintiff charging him with murder. He was tried and convicted of involuntary manslaughter and sentenced for the term prescribed by law. The case was appealed, People v. Hebert, 228 Cal.App.2d 514, 39 Cal.Rptr. 539 (1964) and reversed on the grounds that the jury had not been adequately instructed on proximate cause, and that the instructions given were unclear and confusing, resulting in prejudicial and reversible error.

At the time the case came up for retrial, it was dismissed on motion of the District Attorney. Plaintiff was in custody from the time of his arrest on Febuary 13, 1962, until July 20, 1964.

On February 2, 1965, plaintiff filed the present action against Officers Veditz and Morley, two other Santa Monica police officers, Eckstein and Brady, and Dr. Harold Kade, the Los Angeles County autopsy surgeon pre-

viously mentioned, who testified as to the cause of death at plaintiff's murder trial.

Plaintiff introduced no evidence whatsoever involving Officers Eckstein and Brady, and upon motion made on their behalf, the Court ordered the case dismissed as to these Officers at the conclusion of plaintiff's case in chief.

Thereupon the case proceeded against Officers Veditz and Morley to a conclusion, with evidence being introduced on behalf of these defendants and rebuttal evidence on both sides.

█ There is no evidence in the record of any kind whatsoever relating to any conspiracy between the defendants or between any one of them and any other person. It necessarily follows that the Court has absolutely no basis upon which to make any finding that the plaintiff is entitled to recover damages under the provisions of Section 2 of the Civil Rights Act of 1871, 42 United States Code § 1985(3).

The sole claim, then, of the plaintiff against the two remaining defendants, Officers Veditz and Morley, which the Court is called upon to adjudicate, is for damages under Section 1 of the Civil Rights Act of 1871, 42 United States Code § 1983. The only issue raised by the pleadings and the evidence is whether the defendants Veditz and Morley, under color of State law, so acted with respect to plaintiff as to deprive him of his liberty without due process of law.

█ In examining the law determinative of this issue in the light of the facts developed at the trial, we note in the language of Pierson v. Ray, which is the latest Supreme Court pronouncement on the liability of police officers in making arrests:

"[6–8] The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable

if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. * * * A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295 (1967);

Restatement (Second) Torts § 121 (1965),

1 Harper & James, Torts, § 3.18, at 277–278 (1956);

State of Missouri ex rel., and to Use of Ward v. Fidelity & Deposit Co. of Md., 179 F.2d 327 (C.A. 8th 1950).

While affirming the doctrine of Monroe v. Pate, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) supra, that police officers are subject to suit under § 1983, the Court specifically held that "the defense of good faith and probable cause * * * available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967).

█ Moreover, it is clear that while the "due process of law" guaranteed by the Federal Constitution to all citizens is not to be measured entirely by the individual State's concept of due process as set forth in the State's statutory procedural laws governing arrests and commitments, nevertheless if the procedure prescribed by the State in actuality does afford the basic due process contemplated by the Federal Constitution and if this procedure is actually followed, there is no denial of the "due process"

right guaranteed by the Federal Constitution.

Lucero v. Donovan, 354 F.2d 16, 21 (C.A. 9th 1965);

Mueller v. Powell, 203 F.2d 797, 800 (C.A. 8th 1953);

Lucero v. Donovan, 258 F.Supp. 979 (C.D.Cal.1966);

See also: Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967).

Turning now to the California Penal Code § 836, the statutory procedure governing arrests, we find pertinent provisions in effect on the dates of plaintiff's arrest and incarceration in 1962–64. California Penal Code § 836 [13] provides that a peace officer may make an arrest without a warrant whenever he has *reasonable cause* to believe that the person to be arrested has committed a felony whether or not a felony has in fact been committed. And § 847 [14] provides that there shall be no civil liability on the officer's part and no cause of action shall arise against him, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when at the time of such arrest he had *reasonable cause* to believe such arrest was lawful.

It is evident that the "reasonable cause" required by the California statutory safeguards covering arrest is virtually identical with the United States Supreme Court's safeguards of "good faith and probable cause".

Whether they be stated in terms of the permissive activity of the peace officer and the defense available to him in a State common-law action for false imprisonment and a Federal action under the Civil Rights Act of 1871, or in terms of due process rights granted to the arrested person by State common-law and the Federal Constitution, the test is clear and the meaning is certain and definite.

■ As pointed out by the California Supreme Court in People v. Cockrell, 63 Cal.2d 659, 665, 47 Cal.Rptr. 788, 792, 408 P.2d 116, 120 (1965):

"Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (People v. Torres, 56 Cal.2d 864, 866, 17 Cal.Rptr. 495, 366 P.2d 823; People v. Fischer, 49 Cal.2d 442, 446, 317 P.2d 967.)"

■ Applying this test and this meaning to the evidence in the record here before the Court, there is no question that the arrest of plaintiff was made in good faith and with reasonable as well as probable cause.

Therefore, the cause having been submitted for decision by the Court, trial by jury having been expressly waived by the parties, and the Court having duly considered the pleadings and all of the evidence both oral and documentary, as well as the arguments of counsel made at the conclusion of the case, and the Court being fully advised in the prem-

---

13. "§ 836. *Peace officers; arrest under warrant; grounds for arrest without warrant*
A peace officer may make an arrest in obedience to a warrant, or may, without a warrant, arrest a person:
  *      *      *      *      *
3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

14. "847 * * * *liability for false arrest*
  *      *      *      *      *
There shall be no civil liability on the part of and no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when:
(a) Such arrest was lawful or when such peace officer, at the time of such arrest had reasonable cause to believe such arrest was lawful; or

(b) When such arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested;"

ises, the following formal Findings of Fact and Conclusions of Law in favor of defendants and against plaintiff are made and entered herein:

## FINDINGS OF FACT

### I

Plaintiff is, and at all times pertinent to this action, has been a citizen of the United States and the action is one for damages under 42 United States Code, § 1983.

### II

On February 13 and 14, 1962, and at all other pertinent times, the said named defendants were police officers employed by the City of Santa Monica and were acting within the scope and course of their authority as police officers and acting under color of law.

### III

In the early morning of February 13, 1962, shortly after midnight of the 12th, the plaintiff became involved in the altercation with one Charles Swallow at the Surf Bar, a public bar in Santa Monica. Without any provocation from said Charles Swallow, except insulting language, the plaintiff struck two blows to the face of Charles Swallow and knocked him to the floor.

### IV

Shortly thereafter, defendant Veditz arrived at the Surf Bar and through a preliminary investigation determined that plaintiff had struck said Charles Swallow, knocking him to the floor. Officer Veditz noticed freshly dried blood beneath the nose of Swallow and received a statement at that time from the plaintiff that he had acted in self-defense. Thereupon, Officer Veditz escorted plaintiff to the sidewalk in front of the Surf Bar and placed him in the custody of Officer Morley, who thereupon placed and locked him in the rear seat of a police car. At the time Officer Morley placed plaintiff in the police car, plaintiff stated to him that Swallow had pulled a small penknife on him just before he slapped him. Officer Morley then went directly into the Surf Bar and assisted Officer Veditz, who had arrested Swallow for intoxication. They removed Swallow to Morley's police car and Morley thereupon drove directly to Santa Monica Police headquarters. Officer Veditz had a short discussion with the plaintiff in which plaintiff again stated that Swallow had pulled a knife upon him before he slapped Swallow with his palm. Officer Veditz thereupon, within three or four minutes from the time that plaintiff had been placed in the police car, released him to go to his home.

Morley arrived at the police station and Veditz arrived shortly thereafter. The two officers assisted Swallow directly to the booking window of the Santa Monica jail. At this time Swallow was conscious and they placed him in a position where he was steady and was holding onto a wire mesh screen with both hands at about the level of his head and his feet approximately one foot in back of the booking desk, a standard and customary position for placing an intoxicated person at the booking window at the time of booking. Thereupon Officer Veditz left and Officer Morley proceeded to search Swallow, looking particularly for a knife. No knife was found on Swallow. During the course of the search by Morley, Swallow suddenly had a seizure, became completely rigid, and fell over backwards, striking his head on the floor of the jail, which was concrete but covered with linoleum asphalt tile. Morley then noticed some blood trickling from Swallow's ears. A call was immediately placed for an ambulance. Photographs were taken of Swallow in the position in which he fell and a blanket was placed over him pending arrival of the ambulance. Upon arrival of the ambulance he was taken directly to the Santa Monica Emergency Hospital and then to the General Hospital where he died about 10:00 a. m. on February 13, 1962.

### V

Shortly before midnight on the night of February 13, 1962, Officer Veditz

contacted the plaintiff near his home and requested that he come to police headquarters for questioning. Veditz did not arrest the plaintiff at this time. At police headquarters plaintiff was questioned for approximately one-half hour, at the end of which time Veditz placed him under arrest at about 12:30 a. m. on February 14, 1962, on a charge of suspicion of violation of California Penal Code § 187, "murder".

At the time that Officer Veditz placed plaintiff under arrest he, Veditz, had the following information:

1. At the time that Veditz arrived at the scene of the altercation in the Surf Bar he observed Swallow lying in a prone position on the floor on his back with a small amount of dried blood just under his nose.

2. Plaintiff told Veditz shortly after Veditz arrived at the scene of the altercation in the Surf Bar that he, the plaintiff, had slapped Swallow when Swallow pulled a small penknife out of his pocket with the blade open.

3. At the police station, at the time of booking, Swallow had suffered a seizure that did not appear to be of a type experienced by a person in a state of intoxication.

4. At approximately 7:00 p. m. on February 13, 1962, Officer Veditz, in the company of another officer, interviewed a witness to the altercation, Edna May Schwing. In this conversation she stated that the plaintiff had struck Swallow without any provocation, verbal or otherwise, at a time when Swallow was so intoxicated, or ill, that he could not protect himself, and that plaintiff hit Swallow in the face knocking him to the floor, at which time Swallow appeared semiconscious.

5. Veditz, on February 13, 1962, at around 8:00 p. m., spoke to a Los Angeles County Deputy Coroner who stated to him that the blows and fall that Swallow had received in the bar probably caused the seizure at the police station and his ultimate death.

6. Veditz was present during the interview of the plaintiff at police headquarters at which time the plaintiff made statements inconsistent with previous statements made to Veditz.

7. Plaintiff stated during the interview at police headquarters that Swallow had not pulled a knife on him; that he saw Swallow's hand go into his pocket, but he had no reason to believe that Swallow had a knife in his pocket. Plaintiff further stated that he twice struck Swallow in the face with his fist. Plaintiff stated Swallow had pushed him before he struck him, although plaintiff had not previously made such an assertion. Plaintiff at that time gave his name as Lee Doaks.

VI

On February 16, 1962, these facts together with other statements obtained by defendant Eckstein from other witnesses present at the time of the altercation, indicating plaintiff had without provocation struck Swallow in the face with his fist knocking Swallow to the floor in the Surf Bar, causing his head to hit the floor, were presented to the District Attorney's office together with a statement by Dr. Kade, County Autopsy Surgeon, that the blow in the bar had resulted in the eventual death of Swallow.

VII

Thereafter, plaintiff stood trial and was convicted by a jury of involuntary manslaughter, but the California District Court of Appeal reversed the case on the basis that insufficient and inadequate instructions had been given on the question of proximate cause, resulting in prejudicial and reversible error. When the case was returned to the Superior Court for retrial the District Attorney moved for dismissal and the case was dismissed.

VIII

At no time did Veditz or Morley mistreat Swallow while he was in their custody nor were they negligent in the manner in which he was placed at the booking window. The fall of Swallow in the

police station was accidental and not due to any negligence of Morley.

## IX

At no time did Officers Eckstein, Brady, Veditz or Morley conspire with each or any of the other officers or with any other person, to conceal the incidents surrounding the fall of Swallow in the police station nor did they so conspire to fabricate any charges against plaintiff, nor did they place any charges against plaintiff which they knew to be false.

## X

The evidence shows by a clear preponderance, in fact overwhelmingly and beyond any reasonable doubt, that defendants Veditz and Morley had reasonable and probable cause to detain plaintiff at the Surf Bar immediately after the altercation, that they did so in good faith, and that Officer Veditz had reasonable and probable cause and acted in good faith in placing plaintiff under arrest at about 12:30 a. m. on February 14, 1962.

## XI

The allegations contained in plaintiff's complaint inconsistent with the findings of fact herein are untrue.

## CONCLUSIONS OF LAW

### I

All Findings of Fact which are actually Conclusions of Law are hereby incorporated and made a part of these Conclusions of Law.

### II

This Court has jurisdiction of the cause pursuant to the provisions of 42 U.S.Code §§ 1983 and 1985(3), and 28 U.S.Code §§ 1331(a), 1343(1), 1343(3), and 1343(4).

### III

That no defendant under color of any statute, regulation, custom or usage subjected or caused to be subjected the plaintiff to the deprivation of any rights, privileges or entitlements secured by the Constitution or laws of the United States or of the State of California.

### IV

That no defendant conspired to abridge or deny to plaintiff any of the rights, privileges or entitlements secured by the Constitution or the laws of the United States or of the State of California or any of the civil rights of plaintiff or to deny to plaintiff equal protection secured by the laws.

### V

That defendants were acting within the course and scope of their employment by the City of Santa Monica as police officers and were acting in good faith and under color of law.

### VI

That defendants and each of them did have reasonable and probable cause to believe that a felony had been committed by the plaintiff and did, in good faith and with reasonable and probable cause, detain and arrest plaintiff.

### VII

That defendants and each of them had and have a good and valid defense to this action under the Civil Rights Act of 1871 for conduct in the performance of their duties in good faith and with probable and reasonable cause.

### VIII

No defendant performed any unlawful or illegal act.

### IX

No defendant entered into a conspiracy to perform any unlawful or illegal act.

### X

That the allegations contained in plaintiff's complaint inconsistent with the Findings of Fact herein are untrue.

### XI

That defendants William P. Veditz and Frank Morley are entitled to judgment in their favor.

### XII

Each party to this action shall bear his own costs.

Let judgment be entered accordingly.