Samuel H. SHEPPARD, Plaintiff-Appellant,

v.

The E. W. SCRIPPS COMPANY, Louis B. Seltzer, Samuel R. Gerber, Defendants-Appellees.

No. 18977.

United States Court of Appeals Sixth Circuit.

Jan. 21, 1970.

---

Gerald Alch, Boston, Mass., for appellant; F. Lee Bailey, Boston, Mass., Benjamin L. Clark, Columbus, Ohio, Russell A. Sherman, Elyria, Ohio, on brief.

Dwight B. Buss, Cleveland, Ohio, for appellees, The E. W. Scripps Company and Louis B. Seltzer; Parker M. Orr, Don G. Pace, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief.

John L. Dowling, Asst. Pros. Atty., Cleveland, Ohio, for appellee, Samuel R. Gerber; John T. Corrigan, Pros. Atty., of Cuyahoga County, A. M. Braun, Adam P. Angelas, Asst. Pros. Attys., Cleveland, Ohio, on brief.

Before PECK, McCREE and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The complaint filed in the District Court in this action alleges a deprivation of constitutional rights and seeks recovery of damages under the provisions of 42 U.S.C. § 1983. The complaint alleges the murder of plaintiff's wife July 4, 1954, and his arrest, indictment, trial and conviction therefor. Recovery is sought from the publisher of a newspaper, its editor and the local county coroner, hereinafter referred to as Gerber. It is alleged that as a result of conspiratorial conduct of the defendants during the investigatory and trial proceedings culminating in his conviction plaintiff was deprived of a fair trial, due process of law and the rights, privileges and immunities secured to him by the United States Constitution. The judgment of conviction was subsequently vacated by the Supreme Court and the cause remanded for a new trial in the state court, which resulted in a verdict of acquittal. In the present action, the District Court sustained the defendants' motion to dismiss the complaint, and this appeal was perfected from the order granting that motion.

Early in its opinion, the District Court offers this observation:

"At the outset, this court determines that the complaint must fail in its entirety if, for any reason, it is insufficient to state a claim as to Gerber, for, since defendants Scripps and Seltzer are chargeable only as private citizens and cannot be said to act 'under color of any State Law,' it is clear from nearly a hundred years of case law that the Civil Rights Act, affording protection against deprivation of civil rights by state action, is not applicable to them, absent a conspiracy with one so acting."

We are in accord with this expression. See Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947); In re Civil Rights Cases, 109 U.S. 3, 17, 3 S.Ct. 18, 27 L.Ed. 835 (1883); Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968); Cooper v. Wilson, 309 F.2d 153 (6th Cir. 1962); Jones v. Alfred H. Mayer Company, 255 F.Supp. 115 (E.D.Mo. 1966).

In his brief appellant states that the decision of the District Court appealed from was predicated upon two conclusions of law, namely that the complaint did not allege conduct by Gerber "under color of law," and that Gerber's position as coroner was quasi-judicial in character, affording him immunity. While it is true that the opinion of the District Court deals with these two issues at length, that opinion further resolves a third issue adversely to appellant in this language: "[N]othing Gerber is alleged to have done under color of law could properly be said to be the *cause* of any deprivation of rights the plaintiff allegedly suffered." If this is true, whether or not the acts were done under color of law obviously becomes immaterial.

The issue as to whether Gerber's acts were the cause of the alleged constitutional deprivation has been passed upon by the Supreme Court in the opinion resulting in the vacation of appellant's con-

viction and the remand for retrial (Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). That this issue was squarely before the Supreme Court becomes apparent in the first paragraph of Mr. Justice Clark's opinion (384 U.S. 335, 86 S.Ct. 1508):

> "This federal habeas corpus application involves the question whether Sheppard was deprived of a fair trial in his state conviction for the second-degree murder of his wife because of the trial judge's failure to protect Sheppard sufficiently from the massive, pervasive and prejudicial publicity that attended his prosecution. * * * We have concluded that Sheppard did not receive a fair trial consistent with the Due Process Clause of the Fourteenth Amendment and, therefore, reverse the judgment."

The opinion proceeds with a detailed review of the facts of the offense and of the trial, which is perhaps best summed up in the often quoted language of Judge Bell of the Supreme Court of Ohio and which is set forth in Justice Clark's opinion (384 U.S. 356, 86 S.Ct. 1519):

> " 'Murder and mystery, society, sex and suspense were combined in this case in such a manner as to intrigue and captivate the public fancy to a degree perhaps unparalleled in recent annals. Throughout the preindictment investigation, the subsequent legal skirmishes and the nine-week trial, circulation-conscious editors catered to the insatiable interest of the American public in the bizarre. * * * In this atmosphere of a "Roman holiday" for the news media, Sam Sheppard stood trial for his life.' [State v. Sheppard] 165 Ohio St. [293,] at 294, 135 N.E.2d [340,] at 342."

Justice Clark follows that quotation with this observation: "Indeed, every court that has considered this case, save the court that tried it, has deplored the manner in which the news media inflamed and prejudiced the public." The very fact that the trial was conducted under such deplorable conditions, however, points up the fact that the deprivation of appellant's constitutional rights resulted from the unfortunate circumstances accompanying the trial itself rather than from any conduct Gerber may have engaged in. That the Supreme Court found this to be true clearly appears from its opinion, which squarely places the blame where it really belongs under our system of administration of justice, on the trial judge.

After observing that the trial began two weeks "before a highly contested election at which both Chief Prosecutor Mahon and [Trial] Judge Blythin were candidates for judgeships," Justice Clark continues (384 U.S. 354–355, 86 S.Ct. 1518):

> "While we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone, the court's later rulings must be considered against the setting in which the trial was held. In light of this background, we believe that the arrangements made by the judge with the news media caused Sheppard to be deprived of that 'judicial serenity and calm to which [he] was entitled.' Estes v. State of Texas * * * 381 U.S., at 536, 85 S.Ct. at 1629 [14 L.Ed.2d 543]. The fact is that bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial, especially Sheppard."

After a further review of the facts and the publicity attendant upon the trial, the opinion commented upon the absence of rules governing the use of the courtroom by newsmen and insulating the proceedings from prejudicial publicity and disruptive influences, and then concluded "that these procedures would have been sufficient to guarantee Sheppard a fair trial." (384 U.S. 358, 86 S.Ct. 1520). Finally, in concluding the opinion Justice Clark stated (384 U.S. 363, 86 S.Ct. 1522):

> "Since the state trial judge did not fulfill his duty to protect Sheppard

from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom, we must reverse the denial of the habeas petition."

■ The essence of the complaint in the present case is contained in its allegations charging a deprivation of constitutional rights by Gerber, but as is demonstrated in the foregoing quotations the Supreme Court has already determined that the trial judge, not Gerber, is responsible for that deprivation. In view of that determination, it must be here concluded that the District Judge properly found that no cause of action was stated.

Since we find the controlling issue to have been determined by the Supreme Court it is unnecessary to here examine the other grounds relied upon by the District Judge, and we expressly refrain from expressing an opinion on the claimed deficiency of the complaint in not specifically stating that the various acts alleged were committed "under color of law," and as to whether Coroner Gerber was entitled to judicial immunity. We observe, however, that even in the absence of the opinion in Sheppard v. Maxwell, *supra,* the greater weight of authority and better reasoned decisions would require us to find the lack of a cause of action. Striker v. Pancher, 317 F.2d 780 (6th Cir. 1963); Cuiksa v. City of Mansfield, 250 F.2d 700 (6th Cir. 1957); Dunn v. Gazola, 216 F.2d 709 (1st Cir. 1954); Whittington v. Johnston, 201 F.2d 810 (5th Cir. 1954); Reinke v. Walworth, County Sheriff, 282 F.Supp. 377 (E.D. Wis. 1968); Sinchak v. Parente, 262 F.Supp. 79 (W.D. Pa. 1966). In Striker v. Pancher, *supra,* this court considered a situation in which plaintiff claimed to have been deprived of constitutional rights by County Sheriff Pancher. We therein observed that "Pancher did not directly deprive Striker of any right of any sort. He had no authority or shadow of authority in respect to the trial. It is not claimed that any statute, custom or usage gave Pancher any authority in respect to the trial * * *."

(317 F.2d 783). This pronouncement has precise application to the circumstances with which we are concerned, in which Gerber "had no authority or shadow of authority in respect to the trial." In *Cuiksa, supra,* we considered a situation in which the alleged deprivation, as here, consisted of actions on the part of a defendant in initiating the prosecution and in testifying at the trial. We held that these actions did not deprive the appellant therein of any constitutional right, and with reference to the constable defendant-appellee observed, "Nor is he responsible for the subsequent actions and rulings of the judge." (250 F.2d 704). Similarly, in the present case it could scarcely be contended that Gerber was in any way responsible for Judge Blythin's conduct of the trial. In *Whittington, supra,* another situation existed in which the plaintiff alleged a deprivation of rights, but wherein the court pointed out that "[i]f there was any denial of due process, the efficient cause thereof was the omission of the state probate judge to give notice of the proceeding. That failure is not attributable to these defendants." (201 F.2d 811). The analogy to the case here reviewed is too obvious to require comment.

In accordance with the foregoing, the order of the District Court from which this appeal was perfected is affirmed.

McCREE, Circuit Judge (concurring).

I concur in the result reached by my brethren. However, I do not agree with their conclusion that the Supreme Court's determination in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), that appellant's rights were violated by "the [trial] judge's failure to insulate the proceedings from prejudicial publicity and disruptive influences", 384 U.S. at 358, 86 S.Ct. at 1520 n. 11, necessarily precludes the possibility that his rights might also have been violated by a conspiracy to prosecute him without cause and to prevent a fair trial. Appellant has alleged that certain private persons engaged in publishing newspa-

pers and a public official conspired to corrupt the judicial process in order to obtain his conviction for murder, and, on a motion to dismiss, we must accept these allegations as true. The deprivation of constitutional rights which the Supreme Court found in Sheppard v. Maxwell and the deprivation alleged here are not mutually exclusive, and the fact that appellant chose one as the basis for his habeas corpus petition in 1963 should not prevent him from basing a damage suit on the other.[1]

Nevertheless, I agree with the District Judge who held that the allegedly actionable conduct of Coroner Gerber is insulated from liability under the Civil Rights Act by a doctrine analogous to that of judicial immunity. As the District Judge observed in his opinion, the Supreme Court has held that the Civil Rights Act did not abrogate the common law immunity of certain public officials for actions within their jurisdiction.[2] This doctrine applies not only to judges, but also to other officials whose duties are quasi-judicial. Kenny v. Fox, 232 F.2d 288 (6th Cir. 1956), cert. denied sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). And the same immunity has been extended to coroners. Hebert v. Morley, 273 F.Supp. 800, 802–803 (C.D.Cal.1967). I agree with the District Court that the only conduct in which defendant Gerber is alleged to have engaged under color of law must be characterized, under the laws of Ohio and under the Civil Rights Act, as quasi-judicial. *See* State ex rel. Harrison v. Perry, 113 Ohio St. 641, 644–645, 150 N.E. 78 (1925). Since this action cannot

be maintained against Gerber, the only defendant who acted under color of law, it must fail as to the others. Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965).

---

1. An action for malicious prosecution might have been filed in state court, but that does not render unavailable the remedies of the Civil Rights Act. Diversity is not alleged here, and therefore I do not consider whether appellant has a good cause of action for malicious prosecution under the Ohio tort law. *See* Sheppard v. The E. W. Scripps Co., 421 F.2d 559 (6th Cir. 1969).

2. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *see* Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646

(1872) (common law immunity). The immunity applies even to acts which are alleged, as are those here, to have been maliciously or corruptly motivated. Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. at 1218. The policy behind this rule is not difficult to discern. As the Supreme Court expressed it, a judge "should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Id.*